WILLIAM BEARD *et al.*

*v.*

JANET SKELDON.

*Filed at Ottawa May 15, 1885.*

1. MINES AND MINING—*provisions for safety of miners—providing a brake for the drum—the statute construed.* The manifest object of section 6, chapter 93, of the Revised Statutes, in requiring that "every drum shall be provided with a sufficient brake to prevent accident in case of the giving out or breaking of the machinery," was to provide such brake as a protection to the life of the miner, in the cage ascending or descending, where, at any time or for any cause, the machinery used in raising or lowering the cage should refuse to perform any of its proper functions. The brake is required to stop the cage whenever there may be danger, whether it arises from the giving out or breaking of machinery, or for some other cause. A failure of the machinery to perform its proper office may be regarded as a "giving out," within the meaning of the statute.

2. SAME—*death of miner from negligence of the proprietor — of the right of action therefor—the statute construed.* That part of section 14, chapter 93, relating to "Miners," which provides that in case of loss of life by reason of any willful violations of the act, or willful failure to comply with any of its provisions, "a right of action shall accrue to the widow of the person killed, his lineal heirs or adopted children, or to any other person or persons who were, before such loss of life, dependent for support on the person or persons so killed," authorizes but one action and but one recovery for the entire loss.

3. Under that act, if the deceased miner leaves a widow surviving, she is entitled to sue and recover for the loss, whatever it may be; but if there is no widow, a right of action is conferred upon his lineal heirs or adopted children, if any, and if there is no widow or lineal heirs or adopted children, then any person may maintain the action who before the death was dependent for support on the person killed.

4. MEASURE OF DAMAGES—*death of miner—elements to be considered.* In an action on the case, by the widow of a miner, against the proprietors of a mine, to recover for the death of her husband, under section 14, chapter 93, of the Revised Statutes, the court instructed, that in assessing damages "the jury may allow all such pecuniary damages sustained by the plaintiff as are the direct result of the death of her husband; and in making their estimate of the damages, the jury may take into consideration whether or not said deceased left surviving him, in addition to said widow, any children:" *Held,* that the instruction was not erroneous.

5. ERROR WILL NOT ALWAYS REVERSE—*as to the giving of instructions.* Where the proprietors of a coal mine had provided no brake of any kind to a drum connected with the hoisting machinery of a coal shaft, in consequence of which the plaintiff's husband was killed, it was *held,* in an action to recover damages for the death, that an error in an instruction containing a requirement as to the character and quality of the appliances for a brake, somewhat stronger than the statute required, could not have prejudiced the defendant, as no question was presented as to the quality or sufficiency of a brake.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. ROLLIN S. WILLIAMSON, Judge, presiding.

Messrs. McCONNELL & SMITH, for the appellants.

Mr. WILLIAM MOONEY, and Mr. WILLIAM H. SKELLY, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action by Janet Skeldon, a widow, against appellants, proprietors of a coal mine at Godfrey, in Grundy county. The action was brought under section 14, chapter 93, of the statute entitled "Miners," by the widow, to recover for the death of her husband, who was killed at the bottom of appellants' coal shaft, in consequence of the cage descending upon him, while in the discharge of certain duties which he was ordered to do by appellants' foreman in charge of the mine. The cause has been tried three times, before a jury, in the circuit court, and in each trial the plaintiff recovered. On the last trial she obtained a judgment for $3500, which was affirmed in the Appellate Court.

As grounds for reversing the judgment, it is first claimed by appellants that the court erred in instructing the jury that in assessing damages "the jury may allow all such pecuniary damages sustained by the plaintiff as are the direct result of the death of plaintiff's husband; and in making their estimate of the damages sustained by said widow, the jury may take into consideration whether or not said deceased left sur-

viving him, in addition to said widow, any children." It is contended that the statute gives a right of action, in case of death, to three distinct parties: First, to the widow; second, to the lineal heirs or adopted children of the deceased; and third, to any person who may have been dependent on deceased for support,—and hence the instruction, which authorizes a recovery by the widow for the entire loss, is in conflict with the statute. Section 14 of the statute under which this action is brought, provides: "For any injury to person or property occasioned by any willful violations, * * * a right of action shall accrue to the party injured for any direct damages sustained thereby; and in case of any loss of life * * * a right of action shall accrue to the widow of the person so killed, his lineal heirs or adopted children, or to any other person or persons who were before such loss of life dependent for support upon the person or persons so killed, for a like recovery of damages for the injuries sustained by reason of such loss of life or lives." We do not think the construction placed on the statute by appellants' counsel is the correct one. The statute, in our opinion, authorizes but one action,—but one recovery for the entire loss. If the deceased leaves a widow surviving, she, under the statute, is entitled to sue and recover for the loss, whatever it may be; but in case there should be no widow, but lineal heirs or adopted children, then the right of action is conferred upon them. But if the deceased should leave no lineal heirs or adopted children, then any person might maintain an action who, before the death occurred, was dependent for support upon the person killed. This, in view of the language of the statute, we regard as a reasonable and proper construction of it. To require three actions to be brought by three different parties for one and the same cause of action, would be productive of useless costs and expenses, which we do not believe was ever within the contemplation of the legislature in the enactment of the law. The right of action is conferred

in the alternative, and when one party entitled to sue brings a suit, all damages which may be recovered on account of the death, must, of necessity, be obtained in the judgment rendered in the suit.

If we are correct in our construction of the statute, defendants' instructions numbered twelve, thirteen and fourteen were properly refused.

Section 6, chapter 93, among other things provides that the operator of every mine operated by shaft shall provide safe means of hoisting and lowering persons in a cage covered with boiler-iron; and such cage shall be furnished with guides to conduct it, in slides, through such shaft, with a sufficient brake on every drum, to prevent accident in case of the giving out or breaking of the machinery. The court gave a construction to the statute in one instruction to the jury, as follows:

"That the design of the statute in requiring that the drum connected with the hoisting machinery of a coal shaft should be supplied with a brake, was to compel the furnishing of an appliance which would hold the cage securely while suspended in or over the shaft, and prevent its going down in case the machinery for any reason should fail to be sufficient to hold it."

The statute expressly requires a brake on every drum, so as to prevent accident in case any of the machinery should break or give out; but we do not understand that the statute compels the furnishing of such an appliance as might prevent an accident in case the machinery should for any reason fail. The instruction contains a requirement somewhat stronger than the statute, and should have been somewhat modified; but we do not think the language of the instruction had any prejudicial influence on the jury, and if it did not, its imperfection forms no substantial ground for a reversal of the judgment. There was no question in the case in regard to the quality or sufficiency of a brake. No brake whatever was

furnished on the drum. There was an entire disregard of the requirement of the statute in this respect, and, doubtless, on this account Skeldon lost his life, as it is apparent from the evidence of the engineer that if a good brake had been on the machinery and in use, the accident would not have occurred.

It is also contended that the court erred in instructing the jury as to what was a "giving out" of the machinery, within the meaning of the statute, as follows:

"And any giving away of the machinery, whether from the breaking or imperfection of some of its parts, a failure of the motive or static power, or from any other cause, would be and is a 'giving out' of the machinery, within the meaning of the law, in this case."

The words of the statute, "giving out or breaking of the machinery," are not to be given a narrow or contracted meaning. A sufficient brake is required to be placed on every drum, which might reasonably be expected to prevent accident in case of the giving out or breaking of the machinery. This statute was passed by the legislature as a protection to the life of the miner, and it should be construed with the same liberality which led to its enactment. Doubtless, the manifest object in requiring a brake on the drum was as a protection to the life of the miner, in the cage ascending or descending, when, at any time or for any cause, the machinery used in raising or lowering the cage should refuse to perform any of its proper functions. The brake is required to stop the cage whenever there may be danger, whether that danger arises from the giving out or breaking of machinery, or for some other cause. We think the circuit court took the correct view of the statute in holding that failure of the machinery to perform its proper office might be regarded as a giving out, within the meaning of the statute.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*