HELEN KULVIE, Defendant in Error, *vs.* THE BUNSEN COAL COMPANY, Plaintiff in Error.

*Opinion filed February 23, 1912.*

1. MINES—*what does not make a coal digger a shot-firer.* The fact that a coal digger has a certificate of competency, under the act of 1908, authorizing him "to seek and accept employment as a coal miner in the mines of the State of Illinois," does not necessarily make him a "shot-firer," as meant by the Shot-Firers act of 1907, even though at the time of his injury he was engaged in firing a shot.

2. SAME—*it is not error to prove that a deceased miner was widow's sole support.* In an action by the widow, based upon the alleged willful violation of a provision of the Mines and Miners act, it is not error to permit the widow to testify that she was supported by her deceased husband and that he was her only means of support. .(*Jones & Adams Co.* v. *George,* 227 Ill. 64, distinguished.)

3. INSTRUCTIONS—*in estimating pecuniary damages to widow the jury may consider whether there are any children.* It is not error to instruct the jury that in estimating the pecuniary damages to the widow as the direct result of her husband's death they might take into consideration whether or not deceased left any children.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. W. B. SCHOLFIELD, Judge, presiding.

H. M. STEELY, and H. M. STEELY, JR., for plaintiff in error.

KEESLAR & GUNN, and C. H. BECKWITH, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Andrew Kulvie was killed in the Bunsen Coal Company's mine October 28, 1909, and his widow brought this suit to recover damages. The cause was tried and submitted to a jury under the third and fourth counts of the declaration. The third count alleges that Andrew Kulvie and his buddy, John Wuysik, were coal diggers in defendant's employment; that the defendant willfully failed to instruct them concerning the manner of discharging blasting shots in said mine but ordered and directed them to discharge three certain shots at a place described, but, having willfully failed to instruct said employees as to the manner of discharging said shots, they fired all three of them at the same time, as one blast, thereby causing an explosion of such force that a large quantity of coal was thrown to and upon Kulvie, instantly killing him. The fourth count alleged defendant willfully failed to instruct Wuysik, Kulvie's buddy, as to the manner of discharging shots but ordered Wuysik and Kulvie to fire three certain shots described; that by reason of the willful failure of defendant to instruct Wuysik as to the manner of firing shots he fired two of them less than one minute apart; that he fired said two shots at the same instant and while Kulvie was attending to firing the other shot; that by reason of firing said two shots at the same time, the force of the explosion was so great that it threw a large quantity of coal to and upon Kulvie, thereby causing his death. The general issue was pleaded, and a trial by jury resulted in a verdict and judgment for plaintiff for $5000. The Appellate Court affirmed the judgment, and the case is brought here by *certiorari*.

One of the errors assigned is, that the trial court erred in refusing to direct a verdict in favor of plaintiff in error. The argument made in support of this contention is, that the deceased was a shot-firer, and the provision of the Mines act of 1899 requiring the instruction of miners as

to the manner of placing and discharging blasting shots does not apply to shot-firers under the Shot-Firers act of 1907. The declaration is based upon the theory that Kulvie was a coal digger and not a shot-firer. Clause d of section 16 of the Mines act of 1899 made it the duty of the mine manager to "give special attention to and instructions concerning  *  *  *  the time and manner of placing and discharging the blasting shots." In 1905 the Shot-Firers act was passed. The act was amended in 1907, and as amended provided that in all mines "where coal is blasted and where more than two pounds of powder is used for any one blast; and also in all mines in this State where gas is generated in dangerous quantities," a sufficient number of practical, experienced men, to be designated as shot-firers, shall be employed by the company and at its expense, whose duty it shall be to inspect and do all the firing of all blasts prepared, in a practical, workmanlike manner in the said mine or mines. Under that act the shot-firer is to determine for himself whether the shot is prepared in a practical and workmanlike manner, and his judgment is conclusive upon this question.

Plaintiff in error insists that the provision of the Mines act requiring the mine manager to give instructions as to the manner of firing shots does not apply to shot-firers, and that under the proof the court should have held, as a matter of law, that Kulvie was a shot-firer and should have directed a verdict in its favor. The declaration alleged that both Kulvie and his buddy were employed as coal diggers. The proof of defendant in error tended to show Kulvie had been working in mines about three years before his death. A certificate issued to him by the miners' examining board under the act of 1908 stated he had worked in coal mines, "at the face, for not less than two years." He and his buddy, Wuysik, worked for plaintiff in error on the night shift, digging coal, for about two months before the accident. They began work at nine o'clock. Six or eight days

before Kulvie's death he and Wuysik were directed by the assistant mine manager to fire the shots prepared by the miners during the night, before coming out of the mine. They were told they would be paid the union scale,—fifty-three cents an hour,—for firing shots, and be allowed three hours' time for doing the work although it occupied only about a half hour's time. They would dig coal until four o'clock in the morning and then go and fire the shots that had been prepared. On the morning of Kulvie's death three shots had been prepared in the pillar of coal between the end of room 17 and the fifth east entry off the main south entry in said mine, and he and Wuysik went to discharge them. Wuysik testified there were four shots at said place, but the proof seems to show he was mistaken in this and that there were only three. He testified that when they came to the place where the shots were prepared he was to fire two and Kulvie the others; that when he was ready to light the fuse he inquired of Kulvie if he was ready, and Kulvie answered "ready;" that he lighted two of the shots, then ran into a room and waited a few seconds until they exploded, and that there were two explosions, about a minute apart. After the explosions Wuysik called Kulvie, but receiving no answer went to look for him and found his lifeless body under the coal. It did not appear from the pleadings or proofs that the mine of plaintiff in error was of the class requiring the employment of shot-firers though there is proof that shot-firers were employed, and the proof of the defendant in error tends to show Kulvie and Wuysik were not shot-firers within the meaning of the statute, but were employed for and were engaged in digging coal. Only a small number of men were employed at night in digging coal and but few shots were prepared for firing before the day shift went to work. Wuysik testified he had never fired shots before doing so at the direction of the assistant mine manager, for six or eight days before Kulvie's death, and was unable to tell a good shot from a bad

one. One witness for plaintiff in error testified Kulvie had fired his own shots in other mines before the Shot-Firers act became a law, but neither Kulvie nor Wuysik had any opportunity to examine the holes prepared for the charge or to know anything about how the shots were prepared, except from such inspection as they were able to make when they went to fire them, and no instructions were given them as to the manner of firing shots.

We do not think the fact that Kulvie had a certificate of competency, under the act of 1908, authorizing him "to seek and accept employment as a coal miner in the mines of the State of Illinois," necessarily authorized designating him as a shot-firer, as contended by plaintiff in error. The law under which Kulvie's certificate was issued provided that a certificate issued thereunder should entitle the holder "to be employed as and to do the work of miners as may be expressed in said certificate." The certificate issued to Kulvie authorized him to seek and accept employment "as a coal miner." The act of 1908 was amended in 1909, and as amended the certificate issued by a miners' examining board is not required to state that the holder was authorized to be employed to do the work of a miner, "as may be expressed in said certificate." The act of 1909 provides that certificates shall be issued to applicants found qualified upon examination, and such certificate shall entitle the holder "to be employed as and do the work of miners." The certificate is evidence that the holder possesses the qualifications "to do the work of miners," but does not necessarily show that he possesses the practical experience required of a shot-firer. Notwithstanding Kulvie's certificate, there is proof in the record tending to show he did not possess such knowledge and experience. The mine manager of plaintiff in error testified that Charles Rucker was night boss and assistant to him, and had been working in that capacity in the mine more than a year before the accident. Rucker testified he directed Kulvie and Wuysik

to fire the shots prepared by the night shift; that they had been working under him about two months before the accident and he thought them competent men. Neither Rucker nor the mine manager claimed to know, from observation, anything about the skill of the two men. Rucker testified he had never seen either of them fire a shot, and had no knowledge of their ever having fired any until they did so at his direction. The Appellate Court expressed the view that the proof created the impression that the direction to Kulvie and Wuysik to fire shots was done with a view to escape the expense that would have been required if practical and experienced men had been designated as shot-firers to do the work, as required by the statute, and we think this warranted by the evidence. The proof of defendant in error tended to establish the allegations of the declaration that Kulvie was a coal digger,—not a shot-firer. The trial court instructed the jury to find for plaintiff in error if they believed, from the evidence, deceased and Wuysik were shot-firers at the time of the accident. Under the proof the court properly refused to direct a verdict, and rightly submitted to the jury the question whether defendant in error had proven, by a preponderance of the evidence, the allegations of her declaration that they were coal diggers. The weight and sufficiency of the evidence are not open now to review in this court.

Defendant in error was asked by her counsel as to the amount of wages earned by her husband, what he did with them and how many children they had. She testified the husband supported his family with his earnings and that the family consisted of herself and two children. She was asked by her counsel how old the children were, and testified they were seven and five years old. She was then asked, "What did Andrew Kulvie do with the money that he earned in the coal mine?" She answered, "We used it to live on and clothe on." She was then asked, "Did you have any other means of support?" This was objected to

by counsel for the plaintiff in error, but the objection was overruled and the witness answered that she had no other means of support. Counsel for plaintiff in error moved that the question and answer be stricken. The motion was allowed and both question and answer were stricken out. Thereupon counsel for defendant in error moved the court to strike the question as to what was done with the money earned by Kulvie in the mine, and the answer thereto. The motion was allowed and the question and answer were stricken. Plaintiff in error insists proof that defendant in error had no other means of support than the earnings of her husband was incompetent, and that the error committed in permitting the question to be answered was not cured by the ruling of the court in striking it out.

It has always been held competent, in cases of this character, to prove that the widow was supported by her husband. (*St. Louis, Peoria and Northern Railway Co.* v. *Dorsey,* 189 Ill. 251; *Brennen* v. *Carterville Coal Co.* 241 id. 610.) In *Pennsylvania Co.* v. *Keane,* 143 Ill. 172, the widow was permitted to testify, over objection, that her deceased husband was at the time of his death her sole support. The court, after reviewing a number of previous decisions, announced its conclusion as to the correct rule in the following language: "It cannot well be said that proof that the wife or next of kin of the deceased were, at and before the time of his decease, dependent upon him for support, or that he was her or their sole support, is wholly immaterial and irrelevant to any point at issue in the case. We therefore conclude that there was no error in overruling the objection made in that regard to the evidence." While the question in that precise form, so far as we can find, was not involved in any of the subsequent cases, *Pennsylvania Co.* v. *Keane, supra,* has been repeatedly cited, on the point mentioned, in subsequent decisions, and in some of them the language above quoted has been quoted with approval, and the case has never been overruled. In

*Preble* v. *Wabash Railroad Co.* 243 Ill. 340, it was said: "It was proper to prove that John E. Aiten was the sole support of his widow at the time of his death, and that was the effect of the statement that the widow was dependent upon her husband for support," and *Pennsylvania Co.* v. *Keane, supra,* and other cases, are cited in support of the statement. It will be observed that the question and answer objected to did not relate to the poverty or helplessness of the widow and family after the death of the husband. Such proof has been held to be incompetent, but the question only called for an answer whether, at the time of Kulvie's death, they had any other means of support. The question here is distinguishable from the question decided in *Jones & Adams Co.* v. *George, 227* Ill. 64, and similar cases, where it was held incompetent to permit an injured person suing in his own name for damages, to prove that he had a wife and children dependent upon him for support.

Some other objections are made to the rulings of the court in the admission and exclusion of evidence, but we do not regard them of sufficient importance to require special mention. It is sufficient to say that in our opinion no substantial error was committed by the court in the admission and exclusion of evidence offered.

Complaint is made of certain instructions given on behalf of defendant in error. The first instruction told the jury that in assessing the damages sustained by the plaintiff they should allow such pecuniary damages as were the direct result of the death of her husband, and in making the estimate of such damages they might take into consideration whether or not deceased left surviving him, in addition to the widow, any children. This instruction was approved in *Beard* v. *Skeldon,* 113 Ill. 584. The other instructions complained of were based upon the allegations of the declaration and the theory of defendant in error's case that Kulvie and Wuysik were coal diggers and not

shot-firers, and that if the jury believed this was proven by a preponderance of the evidence, and that Kulvie's death resulted from the willful violation of the statute, as claimed, then they should find the defendant guilty, and that whether Kulvie was guilty of contributory negligence could not be considered as a defense. The instructions did not assume that Kulvie was not a shot-firer but a coal digger. That question was fairly left to the jury. The jury were fully instructed upon defendant's theory of defense, and were told that if they believed, from the evidence, that Kulvie and Wuysik were at the time of the accident shot-firers they should find the defendant not guilty. There is no conflict or inconsistency between the instructions given for defendant in error and those given for plaintiff in error.

Complaint is made of remarks by counsel for defendant in error in argument to the jury. One of her counsel stated that the suit was for the recovery of damages and the amount claimed in the declaration was $10,000. Counsel for plaintiff in error objected to this statement. The court sustained the objection and the counsel who made it withdrew it. Another one of defendant in error's counsel stated to the court that there were no decisions holding it improper to tell the jury, in argument, the amount sued for in the declaration, but that the decisions only held it improper to do so in an instruction. This statement was objected to, but no ruling was made upon it. We do not think the statement made was an improper one. The question here is not similar to the question passed upon in *Illinois Central Railroad Co.* v. *Souders,* 178 Ill. 585. But if the statement had been improper, in view of the action of the court in sustaining an objection to it and the withdrawal of the statement by counsel it would not require a reversal of the judgment.

The judgment is affirmed.          *Judgment affirmed.*