Keith Dodson, Administrator of the Estate of Marjorie Dodson, Deceased, Plaintiff-Appellee, v. Howard Richter, Defendant-Appellant.

Gen. No. 10,362.

Third District.

February 19, 1962.

Rehearing denied March 21, 1962.

Stifler & Snyder, of Danville, for appellant.

Graham, Wise & Meyer, of Danville, and Young & Young, of Rossville, for appellee.

CARROLL, J.

Plaintiff, as administrator of the estate of his deceased wife, Marjorie Dodson, brought suit to recover damages for her death alleged to have been wrongfully caused by defendant. Trial by jury resulted in a verdict and judgment in favor of the plaintiff for $20,500. Defendant has appealed.

The sole question presented on this review is whether under the evidence in the record the amount of the verdict is excessive.

The defendant contends that plaintiff failed to establish that the death of his wife resulted in any pecuniary loss to her next of kin and consequently the proof was insufficient to sustain a verdict for more than nominal damages.

At the time of her death, the deceased was 47 years of age and in good health. She lived with her family consisting of her husband, Keith Dodson, and her

children Mary Kay, aged 15; Elaine, aged 18; and Donald, aged 20. Another son, Wayne, aged 22 years, was not living in the family home. Elaine Dodson, who married subsequent to her mother's death and whose name was then Elaine Bury, testified that she was unmarried and lived at home at the time of her mother's death; that she was then employed at the University of Illinois; that her mother drove her to Fithian each morning to catch a ride to work and brought her home from that point each evening; that her. mother did all the cooking for the family, did the housework, milked the cows, fed the chickens, livestock and other animals, gardened, canned food, made clothing, did the washing and ironing and helped her husband with his bookkeeping.

Mary Kay Dodson testified that at the time of her mother's death she was attending high school; that her mother took her to the school bus each morning and on many occasions brought her home from school. This witness and her brother Donald and her father, Keith Dodson, all testified as to the work performed by the deceased in and about the family home, which included washing, ironing, cooking, making clothing and tending the livestock.

It is argued by the defendant that the evidence given by these witnesses is insufficient to constitute proof of pecuniary loss within the meaning of the Wrongful Death Act, because it fails to show that the decedent contributed any money to the support of her family and also that there is no proof of the reasonable value of the services performed.

 The Wrongful Death Act provides that actions thereunder shall be brought by the personal representative of the deceased person; that the amount recovered shall be for the exclusive benefit of the widow and next of kin of decedent; and that in every such action the jury may give such damages as they shall

24

deem a fair and just compensation "with reference to the pecuniary injuries resulting from such death," to wife and next of kin. (Ill Rev Stats 1959, c 70, § 2.) If in such an action the next of kin are lineal kinsmen of the deceased, the law presumes some substantial damages from the relationship alone. However, where the next of kin are collaterals, their damages are only such as are proved. In other words, the death alone is presumed to result in "pecuniary injuries" to the next of kin who are lineal descendants of the deceased and whether they were in the habit of claiming and receiving pecuniary assistance from the deceased becomes an immaterial question. ILP Death, Sec 30; Howlett v. Doglio, 402 Ill 311, 83 NE2d 708; Hall v. Gillins, 13 Ill2d 26, 147 NE2d 352; Dukeman v. Cleveland, C. C. & St. L. R. Co., 237 Ill 104, 86 NE 712.

In Howlett v. Doglio, supra, the rule is thus stated:

> "In cases arising under the Wrongful Death Act, if the next of kin are lineal kinsmen of the deceased, a presumption of pecuniary loss obtains from the relationship, alone, sufficient to sustain a verdict and judgment awarding substantial damages, without proof of actual loss."

An argument similar to that of defendant was advanced in the Dukeman case. There the deceased left surviving her a husband and her sons, Louis and James. Louis was married and lived with his family, while James, though 42 years of age was unmarried and lived at home with his father and mother. The evidence showed that the deceased was the housekeeper for her husband and son and that the three lived together; that the deceased did all the cooking, washing and housecleaning; that she was in good health and not only did her own housework, but also rendered help to the family of her married son. The trial court refused to instruct the jury that anything more

25

than nominal damages could be recovered and its ruling was assigned as error. The Supreme Court held the instruction to have been properly refused and said:

"Under this evidence the court properly refused to instruct the jury that nothing more than nominal damages could be recovered. But aside from this, the rule is established in this State that where the next of kin sustained a lineal relation to the deceased the law presumes some substantial damages from the relationship alone."

Directly refuting defendant's contention that proof of the value of the deceased's services was essential to recovery of more than nominal damages is Ritthaler v. City of Chicago, 304 Ill App 151, 26 NE2d 150. In that case the deceased was 29 years old and a married woman. At the time of her death she was in good health and living with her husband in her parents' home. She was pregnant and not engaged in housekeeping or in any remunerative occupation. Holding that the deceased's husband was entitled to compensation for loss of his wife's services, the Court said:

"In the instant case, as in most cases of this kind the chief element of pecuniary loss is the personal service of the deceased. Since Mrs. Ritthaler did not happen to be keeping house on her own account at the time she was injured and since she was not engaged at that time in any remunerative occupation or business, all of the competent evidence available was presented at the trial. She was 29 years old and in good health. She was married, living with her husband at the home of her parents, and was in a pregnant condition. Surely the expectancy of service from her to her husband and by her parents was none the less because she did not happen to be employed or keeping house at the time of her death. 'Some wives perform

26

manual labor—others do not; yet the husbands of the latter no less than the former would certainly be entitled to compensation from wrongdoers for causing inability to perform service . . . there need be no direct or express evidence of the value of the wife's service, either by the day, week, month or any other period of time.' Metropolitan St. R. Co. v. Johnson, 91 Ga 466, 18 SE 816."

In Allendorf v. Elgin, J. & E. Ry. Co., 8 Ill2d 164, 133 NE2d 288, the verdict of the jury exceeded the highest figure which an actuary calculated to be the plaintiff's projected pecuniary loss. The plaintiff was shown by the record to have been a kind and faithful father, a good workman and capable of making improvements and repairs around the house. In holding the verdict not to be excessive, the Court said, "It has been repeatedly held that the jury may award damages for such intangibles as the foregoing because they relate to his earning power and his disposition to continue to contribute to the welfare of his family." Citing Norfolk & Western Railway Co. v. Holbrook, 235 US 625; Giles v. Chicago Great Western Ry. Co., 72 F Supp 493, the Court continued:

"In the light of the reasoning found in the Giles and Holbrook cases we are of the opinion that it is unnecessary to undertake to prove the value of the financial loss of such care, etc., any more than it would be necessary to prove the value of pain and suffering or of inconvenience and annoyance when they are elements of damages. The jury should assess the value of such loss in the exercise of their best judgment based upon the facts of each case. Another intangible element for which recovery is proper is services which the deceased husband may have performed about the home."

27

The Court then quoted from Ward v. Denver & Rio Grande Western Railroad Co., 96 Utah 564, 85 P2d 837, as follows:

"A husband's services in the home often have a pecuniary value which it would cost money to replace, such as chores, marketing, and the like. In this case the evidence is that plaintiff and her husband had bought a little place eight miles out in the country where they had cows, chickens, pigs and a garden, and raised alfalfa; that the deceased did work in attending to the pigs, chickens, etc., besides his railroad work; and that when not on duty with the railroad he worked on the place. All this work has a pecuniary value."

In view of the foregoing authorities, we are of the opinion that the plaintiff was not required to prove the value of the services which defendant concedes were rendered by the deceased and the Court did not err in instructing the jury that if it found a verdict against the defendant it should allow such damages as would compensate the lineal next of kin of the deceased for such pecuniary loss and personal services she would have rendered them, if any, as shown by the evidence as the next of kin have sustained by reason of her death.

We do not think Barrow v. Lence, 17 Ill App2d 527, 151 NE2d 120, upon which defendant principally relies, supports his position in the present case. In the Barrow case, which included two death actions consolidated for trial, the decedents were the father and mother of the plaintiff who was the only next of kin. Their ages were 64 and 61 years respectively. They lived in their own home separate and apart from their daughter. They rendered no services to her. The jury returned

28

a verdict for $12,500 in each of the cases. The Appellate Court concluded that the verdicts were so excessive as to indicate they were the result of passion and prejudice and required the total of the awards in the two cases to be reduced by remittitur to the sum of $6,000. As the Court stated in its opinion, such action was taken because the evidence showed "that the daughter was not dependent upon the decedents for support and was receiving no services from them." On rehearing the Court gave consideration to the conflicting views of the parties on the question whether in cases where the deceased was an adult and the surviving lineal kinsmen are all adults there is a presumption of pecuniary loss. The Court also indicated its conviction that the presumption of loss in favor of lineal next of kin was without importance except in the case of a child whose habits of industry and earning power are incapable of proof. In the instant case, as is clearly indicated by our statement of the evidence, the deceased, prior to her death was rendering personal services to her husband and her children. Under the authorities cited, plaintiff was not required to prove the dollar value of such services. It thus appears that plaintiff's evidence met the requirement that an evidentiary basis for loss of support be established. Aside from this, it is our firm conviction that under the well established rule in this state the lineal kinsmen of the deceased were entitled to the benefit of a presumption of pecuniary loss sufficient to warrant a recovery of some substantial damages. Accordingly, we do not consider this to be an occasion for indulging in an academic discussion of the question whether there is a distinction between cases involving the death of an adult and those where the deceased was a child of tender years. Furthermore, it is significant to note that in the Barrow case the Court

29

did not reverse and that the verdicts, after reduction by remittitur, would seem to constitute more than a recovery of nominal damages.

We find no error in this record and the judgment of the Circuit Court is affirmed.

Affirmed.

ROETH, P. J. and REYNOLDS, J., concur.