Eleanor L. Ferraro, Administrator of the Estate of
John J. De Leo, Deceased, Plaintiff-Appellee, v.
Frank M. Augustine, Defendant-Appellant.

Gen. No. 48,992.

First District, First Division.

January 21, 1964.

Meyers & Matthias, and Donald L. Thompson, all of Chicago (Donald L. Thompson, of counsel), for appellant.

Owens, Owens & Rinn, of Chicago, for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

In this action, plaintiff, Administratrix of the Estate of John J. De Leo, deceased, sought to recover from defendant, in Count I of the complaint, the sum of $30,000 for pecuniary injuries sustained by the next of kin by reason of the wrongful death of John J. De Leo, allegedly caused by defendant. In Count II plaintiff sought recovery of $5,000 for hospital and funeral bills incurred. A trial was had before a jury and verdicts were returned under Count I in the sum

of $17,800 and under Count II in the sum of $1,884.40. Defendant appeals from the judgment entered by the Court on these verdicts.

In his brief the defendant has raised no questions as to the pleadings, nor does he seek to contest the judgment in the sum of $1,884.40 rendered against him under Count II. In addition, although liability was contested in the trial court, the defendant in this appeal has conceded his responsibility to respond for damage in some amount to the plaintiff under the allegations in Count I. The defendant does, however, contend that the amount of the contested judgment is greatly excessive; that it is the result of prejudicial conduct on the part of the trial judge; and that it is the result of errors committed at the trial in the admission and exclusion of evidence. The defendant also contends that it was error not to grant a continuance which he requested both before the assignment and trial judges, and that the trial judge entered a void order when he allowed witness fees to plaintiff.

The facts of the case are as follows. The decedent, John J. De Leo, was struck and killed by an automobile operated by defendant. Decedent left as his next of kin, John A. De Leo and Kate De Leo, his father and mother, and several brothers and sisters. The plaintiff, Eleanor L. Ferraro, a sister of the decedent, was duly appointed administratrix and filed this suit against defendant on March 15, 1961. The decedent was a single man, thirty-five years of age and lived with his parents, as did his sister, Virginia De Leo, an unmarried daughter and her minor child. Although decedent had several brothers and sisters it was admitted that none of them sustained any substantial pecuniary loss as the result of his death. John A. De Leo, the father of decedent, was 71 years of age at the time suit was commenced. He had retired in 1959, but was

297

still engaged in part-time work. Kate De Leo, decedent's mother, was 74 years of age and a housewife.

The defendant first contends that where the decedent was an adult, and the next of kin are also adults, as in the case at bar, the latter, in order to recover more than nominal damages must adduce an evidentiary basis for a verdict, and there is no presumption in that case of a pecuniary loss from the death alone, even though the next of kin are lineal.

To support this position our attention is called to the case of Barrow v. Lence, 17 Ill App2d 527, 151 NE2d 120. In this wrongful death action the evidence showed that the married daughter was living with her husband in their own home separate and apart from her parents and that her deceased parents had contributed no support nor rendered any services on her behalf. Upon this record the Appellate Court for the Fourth District reversed the verdicts and judgments entered in the consolidated death actions and required a remittitur or a new trial since they found that the verdicts were excessive and the result of passion and prejudice. The Appellate Court in a long answer to a petition for rehearing attempted to set out the law in terms of presumption of pecuniary loss in wrongful death cases. The court stated:

> Sometimes there is reference to a presumption in favor of lineal next of kin, but always the decisions speak of an evidential basis for the fixing of damages, without reliance on any presumption. For this reason, we conclude the so-called presumption has no importance, except in the case of death of a child who has not yet formed habits of industry, nor a pattern of earning ability.

This attempt to remove the presumption of pecuniary loss in favor of lineal next of kin except in the case of a child was neither sustained by precedent nor was it to be long-lived.

A few months before the court made its decision in Barrow, the Supreme Court handed down its decision in Hall v. Gillins, 13 Ill2d 26, 147 NE2d 352. In that case, Mr. Justice Schaefer, speaking for the court wrote:

> The term "pecuniary injuries" has received an interpretation that is broad enough to include most of the items of damage that are claimed by the plaintiffs in this case. Each plaintiff alleges deprivation of support as well as deprivation of the companionship, guidance, advice, love and affection of the deceased. Loss of support is of course an element of damages under the statute. Indeed so far as these plaintiffs are concerned, since they are the widow and a lineal kinsman, "a presumption of pecuniary loss obtains from the relationship alone, sufficient to sustain a verdict and judgment awarding substantial damages without proof of actual loss."

We can only assume that when the Supreme Court speaks of an operative presumption that this presumption is of some importance and validity. It is true, as was pointed out by the court in Barrow, that in many cases in which the presumption is mentioned, there was additional evidence of pecuniary loss and the presumption became only a legal principle available, but not relied upon by the plaintiff. However, the unmistakable conclusion remains that the presumption in favor of pecuniary loss and in favor of the lineal next of kin is a viable concept in Illinois.

The Appellate Court for the Third District held in Dodson v. Richter, 34 Ill App2d 22, 180 NE2d 505 that a verdict in the wrongful death action in the amount of $20,500 was not excessive. The husband had brought suit and the defendant contended that the plaintiff failed to establish that the death of his wife resulted in any pecuniary loss to her next of kin

and consequently it was claimed that the proof was insufficient to sustain a verdict for more than nominal damages. There the decedent was forty-seven years of age, in good health and living with her family, consisting of her husband and three children. The Appellate Court, after reviewing Barrow v. Lence, said:

> If in such an action the next of kin are lineal kinsmen of the deceased, *the law presumes some substantial damages from the relationship alone.* (Emphasis ours.) However, where the next of kin are collaterals, their damages are only such as are proved. In other words, the death alone is presumed to result in "pecuniary injuries" to the next of kin who are lineal descendants of the deceased and whether they were in the habit of claiming and receiving pecuniary assistance from the deceased becomes an immaterial question. ILP Death, Sec 30; Howlett v. Doglio, 402 Ill 311, 83 NE2d 708; Hall v. Gillins, 13 Ill2d 26, 147 NE2d 352; Dukeman v. Cleveland, C. C. & St. L. R. Co., 237 Ill 104, 86 NE 712.

We have shown that aside from an attempted departure from the general rule in Barrow, the courts of this state have held that there is a presumption in favor of pecuniary loss and substantial damages which operates in favor of the lineal kinsmen of the victim in a wrongful death action. The question would thus seem to be whether the prospective beneficiaries here, the parents of the decedent, are to be considered according to the law of Illinois, as lineal or collateral next of kin.

A collateral heir is one who is not of the direct line of deceased, but comes from a collateral line, as a brother, sister, an uncle, an aunt, a nephew, a niece,

or a cousin of deceased. Corpus Juris Secundum tells us that, "A lineal heir is one who inherits in a line ascending or descending from a common source as distinguished from a collateral heir." 26A CJS Des and Dist Sec 19. This would certainly appear to include the parents of the decedent. The next line, however, includes the statement, "Sometimes, the term 'lineal heir' is deemed to mean descendants." See for example Ernst v. Rivers, 233 Mass 9, 123 NE 93. This confusion in the law arises since under the common law of descent, which followed the feudal system, the mother and father and all persons in the ascending line could not inherit. Cooley's Blackstone, 4th Ed, 601–4. But even in England, this archaic rule was changed in 1833 by the statutes of 3 and 4 Wm IV ch 106. In Illinois the rule has been settled since the early cases of Beard v. Skeldon, 113 Ill 584 and Willis Coal & Mining Co. v. Grizzell, 198 Ill 313, 65 NE 74. In the latter case, which involved a statute giving the "lineal heirs" among others the right to sue for injuries suffered by coal miners, the court was asked to decide whether a father could sue under this statute for the "wrongful death" of his son. The court said:

> Lineal consanguinity is that relation which exists among persons where one is descended from the other, as between the son and a father or the grandfather, *and so upward in the ascending line,* and between the father and the son or the grandson, and so downward in a direct descending line (citing authority). The deceased left no child, children, descendants of children or adopted child or children, and no mother. Benton Grizzell, the father, was the only "lineal heir" of said Thomas Lee Grizzell, the deceased, hence the right of action rests in the appellee Benton Grizzell, alone. (Emphasis added.)

301

In McFadden v. St. Paul Coal Co., 263 Ill 441, 105 NE 314 the Supreme Court in interpreting the same statute simply said: "In this case there was no widow, and the father and mother, *as lineal heirs,* were the only persons authorized to bring suit under the act" (emphasis added). Also see Holliday v. O'Gara Coal Co., 203 Ill App 89, 94.

We conclude that there is a presumption of pecuniary loss in favor of the lineal heirs of the deceased in a wrongful death action from the relationship alone, and that the deceased's parents are such lineal next of kin.

The presumption upon which the plaintiffs have a right to rely has been conclusively shown, but as was pointed out by the court in Barrow, this case, like many others, does not need to rest on a presumption of substantial pecuniary loss; rather, there is extensive evidence of actual pecuniary loss suffered by the decedent's parents.

There is testimony that the decedent was capable of and did a substantial amount of work around the house. This work included such things as building a fence, extending the garage, making repairs on the property and premises and the performance of chores and heavy labor for his elderly parents. In various cases the loss of services of this kind formerly performed by the deceased have provided the basis for recoveries in wrongful death actions. Stejskal v. Darrow, 55 ND 606, 215 NW 83; Brouse v. United States, 83 F Supp 373; and Dodson v. Richter, 34 Ill App2d 22, 180 NE2d 505. In addition to the services performed by the decedent there is evidence in the record that he generally gave $20 per week to his parents and paid $135 per month on the mortgage indebtedness on the home in which his family resided, and while working for the C. and D. Tomato Company he contributed $60 a week to his parents.

302

The defendant's other contentions are all of a more or less procedural nature and although we find none which would result in a reversal of the trial court's judgment we shall discuss them each in turn.

█ The defendant contends that it was error to refuse to grant the defendant's written motion for a continuance which was presented before the assignment judge and before the trial judge. That motion among other things alleged that the deceased died on February 11, 1961, and suit was commenced on June 30, 1961; that after a pretrial conference the matter upon petition filed by plaintiff was on September 15, 1961, advanced for trial; that subsequently on January 24, 1962, counsel for plaintiff filed a statement of Issue and Readiness and defendant's counsel explains that he made no objection since his adversary at that time had promised to furnish him with additional discovery information. The petition went on to allege that when the case was called for trial on February 14, 1962, the counsel for defendant stated that he was not ready for trial because he had not been furnished the discovery information which had been promised to him and that instead he had been frustrated in his attempt to get this information by the lack of plaintiff's cooperation and that thus he was not adequately prepared for trial.

Defendant's motion for continuance was denied and the matter proceeded to trial before Judge Clark, a visiting judge, on March 26, 1962, and after four days of trial a mistrial was declared. The cause was then reassigned by the assignment judge to Judge Dan Roberts for trial on March 30, 1962, at which time defendant's counsel again requested a continuance representing to the court that there was a variance between the answers given by plaintiff to written interrogatories and the evidence to be offered. He represented that this was the reason for the granting of the mistrial before Judge Clark and he reasserted

that without this information he could not properly be prepared on the question of damages. Judge Roberts, as had Judge Clark before him, as well as the two assignment judges, denied defendant's motion and the case again proceeded to trial. As to the request for a continuance after the case was reached for trial under the assignment system, and after defendant's acquiescence to it being moved above the black line, we think that the granting or refusal of a request for a continuance was clearly a matter within the sound discretion of the trial judge. Leathers v. Leathers, 13 Ill2d 348, 148 NE2d 773; Roberts v. McDaniel, 22 Ill App2d 485, 161 NE2d 47.

██ Subsequently, during the trial, the defendant objected to the testimony of employers Albert Bina and Fritz Prueter on the grounds that they were not listed as employers in the answer filed on June 29, 1961, in response to the interrogatory seeking that information. After a lengthy hearing in chambers the objection was overruled by Judge Roberts. We have examined the record and it reveals that although Albert Bina's name was not listed as one of decedent's employers, a letter was sent on September 14, 1961, to the defendant's attorney by plaintiff's attorney enclosing a withholding tax statement of the deceased which furnished this information. Thus we see that the defendant was not surprised and had this information in his possession a full six months before the date of the trial. As to Fritz Prueter, his testimony showed that he was in the landscaping business and he employed the deceased on the average of from three to ten hours per day depending on the weather, and that this employment began on May 16, 1960, and ended in November of that year. He said that he paid the decedent in cash at the end of each day at the rate of $1.25 per hour and that he did not deduct any withholding tax. In her answer to interrogatories, the plaintiff administrator, whose knowledge in the mat-

ter was apparently based on hearsay or second-hand information, stated that to her knowledge the decedent was self-employed as a landscaper. We think that the defendant failed to prove that there was fraud or concealment on the part of plaintiff. The objection to the testimony of both Bina and Prueter presented questions of a discretionary nature which could only be answered by the trial judge. We cannot say under the facts and circumstances presented here that the trial judge abused his discretion in permitting the witnesses to testify.

 It is also charged that the trial judge exhibited prejudice against the defendant throughout the trial and repeatedly demonstrated bias which resulted in a jury verdict which was excessive. From a thorough search of the record, we can only conclude that the trial judge had a difficult case to try, one which was emphasized by the constant objections made by defendant's counsel throughout the trial. Many of defendant's objections were made in relation to the two points just discussed; failure to obtain a continuance and the overruling of his objections as to the testimony of Bina and Prueter. These objections were strenuously made during the trial and on oral argument before us. We can only conclude that counsel persisted in taking these positions because he sincerely felt he was right and the trial judge was wrong. The record, however, shows that the trial judge, although he ruled against the defendant on these points, did not do so in a curt or offhanded manner. Instead the record is replete with evidence of a conscientious and patient judge under very trying circumstances. We see no purpose in reporting the specific remarks of the judge under the facts and circumstances in this case.

 The defendant also contends that the trial court committed error in allowing parol testimony by the parents and sister (administrator) of decedent to the

effect that the parents were the owners of the house at 8639 Center Street in which they and the decedent resided. This testimony was given in support of the evidence by the parents that the decedent had contributed sums of money for the payment of the mortgage on that property. The title to this property was in the name of their daughter and son-in-law who were not living at the Center Street address. The parents testified that they purchased this home and made a down payment of $6,000 with $3,000 in cash and with a check for $3,000 withdrawn from their account at a savings association, but title was not taken in their names nor did they execute the purchase money mortgage which was taken on the property. Title was taken in the names of their daughter and son-in-law and they explained that this was done because they were unable to obtain a loan for the reason, they were told, that they were too old, on pension and the father was not working steadily, and therefore, they took title in the names of their children.

Defendant insists that the parol testimony is a mere conclusion and should have been stricken as against the parol evidence rule, citing cases. We do not feel that the title to the property was the vital issue between the parties as was the case in all of the authorities which the appellant brings to our attention, and thus we see no need to discuss them in disposing of this point. In the case of Northern Assur. Co. v. Chicago Mut. Bldg. Ass'n, 198 Ill 474, 64 NE 979, the court permitted the introduction of parol evidence to vary or contradict a deed of conveyance. Our Supreme Court in that case had this to say at page 478. "The rule of evidence referred to by counsel, that parol testimony is inadmissible to contradict or vary a written instrument, applies only to the parties to the instrument or their privies. (1 Greenleaf on Evidence, sec 279; Silsbury v. Blumb, 26 Ill 287; Harts v. Emery, 184 id. 560; 17 Am & Eng Ency of Law,—1st

ed—453.)" We think it was proper under all the circumstances in the case at bar for the plaintiff to offer evidence to show that her parents purchased the house they lived in, but out of necessity and convenience made other arrangements.

■ Finally, the defendant alleges error in the court's refusal to compel a witness to testify and sustain an objection to his testimony. The defendant attempted to elicit testimony from the Chief of the Taxpayer's Service Branch of the Internal Revenue Service concerning a search that he made in pursuing at their request the tax returns of the decedent for the years 1957 to 1960, inclusive. The witness refused to answer because of instructions and regulations of his department. The record discloses that the plaintiff had furnished authorization to the defendant to obtain copies of these returns. An Assistant United States Attorney for our District informed the court that he objected to the witness giving the information sought by the defendant on the basis of Treasury Regulations. The trial judge in a discussion in chambers which takes up ten pages of the trial record very patiently listened to arguments on this question and then sustained the objection. We consider this ruling to be within the discretion of the court and do not feel that the court abused its discretion.

■ The Wrongful Death Act authorizes a recovery of such damages as the jury shall deem fair and just compensation "with reference to the pecuniary injuries resulting from such death." It is worthy of note that our Legislature has consistently increased the statutory limit in action resulting from wrongful death from $5,000 to $10,000 to $15,000 to $20,000 to $25,000 and now to $30,000. The matter of excessive damages in earlier cases was necessarily based upon the then existing limitation. Here the jury returned a verdict for $17,800 and the trial judge entered judgment on the verdict. Across the nation, substantial

307

awards to a parent or parents have been sustained in cases which are factually not dissimilar from the case at bar. Bolino v. Illinois Terminal R. Co., 355 Mo 1236, 200 SW2d 352 ($13,500); Dow v. State, 183 Misc 674, 50 NYS2d 342 ($10,000 to mother only); Henderson v. National Mut. Cas. Co., 168 Kan 674, 215 P2d 225 ($10,000 both parents); Gordon v. Pappas, 227 Minn 95, 34 NW2d 293 ($8,500 both parents). In the case of Stejskal v. Darrow, 55 ND 606, 215 NW 83 the Supreme Court of North Dakota was asked by the appellant to declare excessive a judgment obtained by a father on account of the wrongful death of his daughter. The Court in affirming the judgment said:

> It is impossible in such cases to ascertain with mathematical exactness the value of such services as may be considered by the jury. The best that can be done is to make an approximation thereof. The jury has the right to take into consideration all of the circumstances, p 85.

Bearing this principle in mind and after a careful review of the entire record we feel that substantial justice has been done between the parties and on that basis an appeals court will affirm the correct verdict and judgment even though some error may have been committed. We have also considered the objection to the other alleged errors including the allowance of subpoena costs and in our view they do not warrant consideration for they are quite without merit.

We find no error compelling reversal in this record and thus the judgment of the Circuit Court is affirmed.

Affirmed.

MURPHY, J., concurs.

ENGLISH, P. J., specially concurring:
I agree that the judgment should be affirmed. I also agree that there was basis in the evidence to

308

sustain the amount of the judgment, even though some of the testimony concerning decedent's monetary contributions to his parents appears to have been greatly exaggerated, if not downright perjurious.[*] Since there was, however, other sufficient evidence to support the verdict, I consider both unnecessary and incorrect the statements in the majority opinion to the effect that the presumption of pecuniary injury in favor of lineal kinsmen is applicable to the facts of this case.

I am in agreement with the scholarly opinion of the Fourth District Court in Barrow v. Lence, 17 Ill App2d 527, 151 NE2d 120. The points covered in that opinion were so skillfully set forth that I shall not attempt to restate them here. As I read it, the language of the courts in Hall v. Gillins, 13 Ill2d 26, 147 NE2d 352 and Dodson v. Richter, 34 Ill App2d 22, 180 NE2d 505 [**] takes nothing from the Barrow opinion. The contrary comments of the majority, and their reliance on these cases indicate, I believe, a misunderstanding of what was said in Barrow. I conclude that the presumption in question is not appropriately invoked in the case at bar.

---

[*] Decedent's sister testified that in 1959 and 1960 he gave to his parents $20 per week in cash and made a monthly mortgage payment on their behalf in the amount of $135. Employers for whom decedent worked during those years testified (on behalf of plaintiff) that his earnings averaged less than $40 per week.

[**] The complaint in Hall sought to establish "hitherto unrecognized common law rights of action for the destruction of the family unit" wholly outside the wrongful death action provided by statute. The plaintiffs were the widow and nine-year-old child of the decedent. Dismissal of the complaint was affirmed.

Dodson was a wrongful death action brought on behalf of a widower and three minor children for the death of their wife and mother. The opinion recites the very extensive services which had been performed for the benefit of the family by the decedent.