(No. 90-CC-2878– ▮)

JOHN A. METTES, Special Administrator of the Estate of JOHN E. METTES, Deceased, Claimant, *v.* THE STATE OF ILLINOIS, DEPARTMENT OF CORRECTIONS, Respondent.

*Opinion filed May 12, 1999.*

KEVIN F. SULLIVAN, for Claimant.

JIM RYAN, Attorney General (SUZANNE L. BORLAND, Assistant Attorney General, of counsel), for Respondent.

## OPINION AFTER REMAND

EPSTEIN, J.

This wrongful death claim against the Department of Corrections ("IDOC") arises out of the suicide of the Claimant's father, John E. Mettes, in the Dixon Correctional Center in 1989, and is back before the Court for a final decision, on both liability and damages, following our remand. (order of December 2, 1994).

### The Remand

We remanded this claim for further proceedings as to both the liability and damages issues. The Court specifically called for further briefing and for additional

evidence on the issues of (1) the foreseeability of John Mette's suicide, and expert testimony, if proffered, to rebut the IDOC's "psychiatric evaluation" defense as to foreseeability; and (2) damages.

We remanded this claim because of the inadequacy of the record in a difficult suicide case where the trial commissioner had recommended a finding of liability. However, this case came to us on stipulated facts and briefs, but without a trial, and thus, our commissioner's recommendations carried little weight. We found that the parties, especially the Claimant, did not present an adequate record for a final decision, particularly as to damages. The Court was also reluctant to make a determination on the foreseeability element of the liability issue, in the absence of full expert testimony.

The Proceedings on Remand

With the retirement of Commissioner Parsons, the case was remanded to Commissioner Shadid, who has returned the case to the full Court with his recommendation for a finding of liability. However, despite our remand and comments, no evidentiary hearing was held. By agreement of the parties, the supplemental record on remand consists primarily of the parties' expert psychiatric reports and a stipulation that adds little to the prior record. On remand, the Claimant has declined the opportunity to present evidence of damages, has waived the supplemental evidentiary hearing that the Court granted him—an extraordinary second bite at the apple to establish his damages—and now relies entirely on the pre-existing inadequate record and the presumption of substantial loss that arises upon the wrongful death of a person. (See, *e.g.*, *Ferraro v. Augustine* (1985), 45 Ill. App. 2d 295, 196 N.E.2d 16.) Accordingly, we have reviewed the entire record *de novo*.

## The Facts

This claim arises from the suicide death of John E. Mettes (Mettes), who, at the time of death, was an inmate at the Dixon Correctional Center (Dixon) of the Illinois Department of Corrections ("IDOC"). John A. Mettes, son of decedent, is the special administrator of the estate of Mettes, and purses this claim as the named Claimant on behalf of the estate.

The decedent, John E. Mettes, was born on March 22, 1943, and was 46 at the time of his death. Prior to his final incarceration, Mettes had attempted suicide by shooting himself in the head, which caused permanent injuries to his head and face that required extensive physical and medical treatment. His injuries were very noticeable and interfered with his daily activities. It is undisputed that the IDOC was aware of this prior condition; many reports of Mettes' condition were received by IDOC.

On August 24, 1989, Mettes was remanded to the IDOC after being found guilty but mentally ill (GBMI) of burglary in Peoria County. He was sentenced to a term of four years imprisonment, with day-for-day credit, plus statutory credit of 180 days, plus credit for the time served. At the time of his remission to the IDOC, Mettes was considered a partially disabled adult, based upon his extensive psychological and physical problems, due especially to his self-inflicted cerebral trauma.

Mettes was first assigned to Jacksonville Correctional Center, then transferred to Dixon where he remained until his death. At, and for, some time before his death, Mettes was relegated to the third floor of the health care unit because of his medical/psychological condition. He was closely monitored by Dixon personnel. At Dixon, Mettes was also treated with Prozac, an antidepressant.

On December 4, 1989, Mettes purchased a six-foot electrical extension cord from the Dixon commissary, although he did not possess, nor have access to, any electrical appliances. It was routine for all commissary purchases to be memorialized in writing; however, it appears that the appropriate Dixon personnel were not made aware of Mettes' purchase. Ten days later, Mettes hung himself with the electrical extension cord in a bathroom stall of his medical unit. The official cause of death was self-inflicted asphyxia due to hanging. John E. Mettes is survived by two children and his mother.

## Liability

There is no dispute over the applicable law. As an inmate of a State correctional facility, the Claimant's decedent was owed a duty of ordinary and reasonable care for his health and safety from IDOC. (*Woods v. State* (1985), 38 Ill. Ct. Cl. 9; see also *Desort v. Village of Hinsdale* (1975), 35 Ill. App. 3d 703, 342 N.E.2d 468.) The Court may look to the following factors in deciding to impose such duty in particular circumstances: (1) the foreseeability of the occurrence; (2) the likelihood of the injury to the inmate; (3) the magnitude of the burden of guarding against the injury to the inmate; and (4) the difficulty of guarding against such injury to the inmate.

The Court has no difficulty concluding that the actions of selling Mr. Mettes the electrical cord which became his suicide implement, and then failing to notify any responsible IDOC staff of this highly irregular purchase by an inmate with a known history of self-destructive behavior, was negligent at best.

This takes us to the only serious defense advanced by IDOC: that they cannot be liable because IDOC personnel made a good faith determination, shortly before his

death, that Mr. Mettes was not suicidal and not a physical threat to himself and, therefore, it was not reasonably foreseeable to IDOC that he would commit suicide, or that his acquisition of an otherwise purposeless electrical cord could enable his suicide. We reject that defense in this case on the facts presented here.

Although there surely may be circumstances when a good faith prediction of benign behavior is a defense to the "foreseeability" element of this kind of tort claim, the fact that IDOC medical personnel did not predict or expect a suicide does not, by itself, preclude a finding that a reasonable person would anticipate a plausible or substantial risk of self-harm of some kind. The measure of foreseeability is not a matter of likelihood that something *will* happen, but a reasonable likelihood that something *may* happen.

Moreover, the Court now has the benefit of both parties' expert psychiatric testimony in the form of the experts' reports: Dr. Michael A. Campion's report (for the Claimant), filed January 19, 1998, and Dr. Anthony T. Schaab, Ph.D. (for the Respondent). Based on those reports, as well as the facts before us, we hold that it was reasonably foreseeable (even if not predicted or even predictable) that Mr. Mettes would harm himself if given the opportunity and means. For the circumstances of this case, prediction or foreseeability of suicide is not the necessary test. Reasonable foreseeability of this inmate's potential danger to himself—whether suicidal or less than suicidal—was more than enough to put the IDOC on notice to prevent what occurred here or, at the very least, to prevent access to self-destructive implements.

We also observe, in reaching this finding, that the three other factors so often cited in the case law (See *Disort, supra*) for imposition of a duty of care in particular

circumstances, strongly weigh against the Respondent. We find the Respondent liable.

## Damages

The much more difficult part of this case is the fixing of damages. Instead of the complete record that the Court had hoped to have in this difficult case, we are confronted with a record that reflects: (1) the decedent was a 46-year-old-man who had apparently been a financial failure; (2) who was survived by two children and his mother; (3) who was physically and mentally impaired, largely at his own hand; and (4) precious little else, including any evidence of his relationship, if any, with his two children or his mother or anyone else. This is due to the Claimant's refusal to present evidence, despite two opportunities to do so, the last coming after the unusual step of the Court advising him that the record was deficient as to damages and giving him a second bite at the damages apple.

We are faced with a Claimant who elects not to appear before this Court, despite his own direct knowledge of at least his own relationship or nonrelationship with the decedent, his father, and who, instead of an evidentiary showing, relies entirely on the presumption of substantial damages that the law affords to surviving lineal kin. Claimant is entitled to do so, but in the context of the limited facts before us and the procedural posture of the case when the Claimant last elected not to present evidence, the Court will draw an inference that there is no, or almost no, material evidence in support of damages to present. We thus come to application of the presumption, but we do not apply it in a vacuum. In this case, if not in all cases, we apply the presumption primarily to the non-economic losses of the surviving kin. Particularly in a case like this, where the only evidence, however limited, points to the decedent's inability, both historically and in the foreseeable

future had he lived, to provide significant support to his family, we would not presume otherwise. But we apply the substantial damages presumption here in the context of a decedent who has not been shown to have had any relationship with the Claimant and those for whom Claimant seeks recovery (through the estate).

After long consideration and careful review of the entirety of this record, as well as a review of the awards given by other Courts in reliance on the presumption (none of which we have found to be close to the facts of this case), the Court has concluded that an award of $30,000 is appropriate to compensate the Claimant and the two other surviving kin.

## Conclusion and Award

For all of the foregoing reasons, the Claimant, John A. Mettes, for the estate of John E. Mettes, is awarded the sum of $30,000 in full and complete satisfaction of this claim for the wrongful death of the decedent, John E. Mettes.