66

(No. 5174— )

DANA JODLOWSKI, Administrator of the Estate of STAN-
LEY JODLOWSKI, Deceased; and DANA JODLOWSKI, Admin-
istrator of the Estate of FRANK JODLOWSKI, JR., Deceased,
Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 17, 1967.*

JOSEPH L. BAIME, and KANE and KANE, Attorneys
for Claimant.

WILLIAM G. CLARK, Attorney General; GERALD S.
GROBMAN, Assistant Attorney General, for Respondent.

PEZMAN, J.

This is an action for wrongful death brought by
claimant, Dana Jodlowski, as Administrator of the Es-
tates of Stanley Jodlowski, deceased, and Frank Jod-
lowski, Jr., deceased, against respondent, State of Illi-
nois, to recover damages for the deaths by drowning of
the said Stanley Jodlowski and Frank Jodlowski, Jr.,
while they were visitors at Wolf Lake State Park.

The Court finds the facts to be as follows:

Wolf Lake State Park is located on the far southeast side of Chicago. It is approximately one and one-half miles long from north to south, and about one-half to one mile wide from east to west. Within the boundaries of this park is a body of water called Wolf Lake. Beginning in the late 1950's and continuing until about 1962, extensive dredging work was performed in Wolf Lake for the purpose of acquiring sand from the lake bottom to be used in the construction of the Calumet Skyway Expressway. This dredging to a depth of twenty-five to thirty-five feet occurred in various parts of the lake, and included some areas near the shoreline. After the dredging had been completed, and the lake filled with water to its normal level, the deep dropoffs or depressions caused by the dredging could no longer be seen. The present custodian of the park, who has held that position since 1960, personally observed the dredging work while in process, and knew of the unusual condition of the lake bottom.

Michael Lalich, a police officer of the City of Chicago, was called as a witness for claimant. He testified concerning the dredging of Wolf Lake approximately seven years ago, and stated that some of the dredging was to a depth of 20 to 25 feet. He also stated that the sand was removed from Wolf Lake to be used for the approaches of the Calumet Skyway being constructed at that time. He said that, "prior to the dredging, this lake was one body of water. It was nothing but a mud hole actually, a mile long and a mile wide, but you could practically walk across the whole lake. Now it is three lakes actually." He further testified that at the time of the drownings there were three signs erected at the lake. One was at the north end of the lake, which stated "Deep Water", and two were located at the south end

of the lake, which stated "No Swimming". He further said that there were no signs at or near the sand bar in question where the boys drowned. He testified that he patrolled the area approximately three times a day while on duty.

On Sunday, August 4, 1963, a party of five drove out to Wolf Lake State Park to do some fishing. This group consisted of Stanley Jodlowski, age 18; his brother, Frank Jodlowski, Jr., age 12; Mrs. Dana Jodlowski, their mother; and two friends, Raymond Borowicz, age 17; and Robert W. Graeber, age 17. The party of five arrived at the park at approximately 8:00 A.M. This was the first time any of the five had ever been to Wolf Lake State Park. Upon their arrival at the lake, the four boys took out their fishing tackle, and began to fish in the lake. At approximately 10:00 A.M., the weather being warm, the boys decided to cool off by wading in the lake by the shore. They removed their shoes and socks, rolled up their pants legs, stepped into the lake, and walked the short distance to the sand bar previously mentioned. The water between the shore and the sand bar was shallow, no deeper than knee high. The boys stayed on the sand bar for a short while, and then walked off of it a few steps to the east. When Frank Jodlowski, Jr., was approximately 10 or 12 feet east of the sand bar, he was suddenly in water over his head and going down. His brother, Stanley Jodlowski, went to his assistance, and was himself dragged down. The other two boys joined hands, and tried to reach out for the Jodlowski brothers, but were not successful. Stanley Jodlowski and Frank Jodlowski, Jr., went down together, and did not come up again. A scuba diver, Jack M. Downey, happened upon the scene, and immediately donned his scuba gear, and dove into the lake at a point

east of the middle of the sand bar. Downey testified at the hearing in this cause that he found the two brothers at the bottom of a drop-off or depression in the lake bottom approximately 20 feet down with one brother lying on top of the other. Downey further stated that the drop-off or precipice went down at an angle of 75 to 80 degrees, and started about 5 feet or so east of the sand bar, and that the precipice was slippery and muddy.

The park custodian, Alfred E. Osborne, testified that during the warm months of the year large numbers of visitors to the park waded and swam in Wolf Lake. He also stated that, during the warm months when visitors to the park were wading and swimming in the lake, there was no supervision by lifeguards, nor were there any life preservers in the park area, or any loud speaker system or other device used to warn visitors of the deep drop-offs and depressions in the lake bottom. He said there were no barriers constructed at any place along the shore of the lake to keep visitors from entering the water, and no markers, ropes or buoys to indicate or warn of the deep drop-offs or depressions.

Custodian Osborne further testified that the only effort made to keep people from swimming and wading in the lake was the erection of certain signs posted at a few places in the park, which bore the legend ''No Swimming''. The ''No Swimming'' signs, which were erected, were made and put up by the custodian or one of his helpers. These signs were frequently torn down, and had to be replaced from time to time. At no time was a professional sign making company engaged to erect the type of signs, which would have been permanent in nature, and which could have withstood the abuse of vandals.

He stated that on summer weekends, when the park

was crowded with several thousand visitors of all ages, the only personnel employed by respondent to operate and maintain the park, and to keep it reasonably safe and warn visitors of danger was the park custodian and his two young helpers. Their chief duties consisted of keeping the park clean, cutting the grass, emptying the garbage, and cleaning the toilets. The park custodian further testified that most of the visitors to the park who swam or waded in the lake seemed to congregate in the southwest portion of Wolf Lake around a sand bar close to the shore. There is no evidence in the record that park personnel were ever stationed in this area on Sundays and holidays, or at any other time, to warn people of the dangerous condition of the lake bottom, or to otherwise provide for the safety and protection of park visitors.

The surviving members of the group testified that, from the time they entered the park up to and including the time of the drownings, there were no visible signs of any kind to warn of the dangerous condition of the lake bottom, or to caution visitors about entering the water. This testimony was corroborated by Police Officer Michael Lalich and by Jack M. Downey, both of whom testified that there were no signs posted on Sunday, August 4, 1963, in the area of the drownings. Mrs. Dana A. Jodlowski, Administrator of the decedents' estates and the mother of the decedents, testified that Frank Jodlowski, Jr., age 12, was a 7th grade grammar school student, and could swim slightly. She further stated that Stanley Jodlowski, age 18, was a graduate of St. Leo High School, was employed at the time of his death by the International Harvester Company of Chicago, and was earning approximately $85.00 per week. She stated that he was going to attend college the following fall, and was a good

swimmer.

This Court is of the opinion that Mrs. Dana Jodlowski, her two sons, Stanley Jodlowski and Frank Jodlowski, Jr., and their two friends, Raymond Borowicz and Robert W. Graeber, were invitees of respondent to Wolf Lake State Park. As invitees, the State had the duty to exercise ordinary care to protect them from harm. It has been held by this Court that the State owes a duty to the public to exercise reasonable care in establishing, maintaining and supervising its parks. *Kamin* vs. *State of Illinois,* 21 C.C.R. 467; *Stedman* vs. *State of Illinois,* 22 C.C.R. 446. In a later decision this Court went even further when it held that the State had a duty to warn of a danger, which existed along a trail in the White Pines State Park, where the State knew that such trail was used by the public, and where those using the trail would have no knowledge of the existing danger. *Hansen* vs. *State of Illinois,* 24 C.C.R. 102. In allowing the claim of claimant in the Hansen case for injuries sustained when he fell into a deep gorge near the trail in question, the Court stated that respondent was negligent in failing to provide notice or warning of the proximity of the dangerous gorge to the portion of the trail in question.

It is the opinion of this Court that respondent was negligent in failing to warn the Jodlowski party and other visitors to Wolf Lake State Park of the dangerous and unusual condition of the lake bottom caused by the dredging. The evidence in the case indicates that respondent had actual or constructive notice of the unusual condition of the lake bottom. Respondent also had actual or constructive notice of the large number of people who came to the park in the warm months of the year, and of their use of the park lake for wading or

swimming. Testimony indicates that, from the time the Jodlowski group entered the park until the occurrence of the drownings, there were no warnings, signs, or other indications given by respondent of the danger of wading or swimming in Wolf Lake. Respondent failed to adopt and provide the requisite safety measures and procedures to warn visitors to the park of the dangerous condition of the lake bottom, and to protect them from it. The drownings of the Jodlowski brothers were the direct and proximate result of this failure. Stanley Jodlowski drowned while attempting to rescue his brother, Frank Jodlowski, Jr. The proximate cause of the injury to one who voluntarily interposes to save the life of a person imperiled by the negligence of others is the negligence, which caused the peril.

There is no testimony in the record to indicate that the Jodlowski brothers or any of the members of the Jodlowski party were guilty of contributory negligence. None of the members of the party had ever been to Wolf Lake State Park prior to August 4, 1963. They came to the park for the purpose of fishing and picnicking. There were no signs in the area of the drownings warning visitors to the park of the dangerous condition of the lake bottom. The evidence indicated that the boys went into the lake not to swim, but merely to wade in water below their knees for the purpose of cooling off. The conduct of the Jodlowski brothers, as well as their two companions, in wading in Wolf Lake was not unreasonable under the circumstances and surroundings. The testimony of the park custodian indicated that the conduct of the boys would appear to be consistent with the conduct of hundreds of visitors to Wolf Lake who during the warm months of the year entered the lake to wade, swim and sun-bathe on the sand bar.

The Wrongful Death Act provides that any amount recovered in any action brought pursuant to the same shall be for the exclusive benefit of the widow and next of kin of such deceased person. The pleadings in the case at bar indicate that the Jodlowski brothers left them surviving as their only next of kin, Frank Jodlowski, their father; Dana A. Jodlowski, their mother; and Christine Jodlowski, their sister. The law is well established in Illinois that, where a person meets his death because of the wrongful act of another, and leaves surviving him lineal heirs, there is a presumption of pecuniary loss as to the said next of kin, and this presumption is sufficient to sustain an award of substantial damages, even without proof of actual loss. Citations *Howlett* vs. *Doglio,* 402 Ill. 311; 83 N.E. 2d 708 (1949) ; *Ferraro* vs. *Augustine,* 45 Ill. App. 2d 295; 196 N.E. 2d 16 (1964).

Claimant, Dana Jodlowski, as Administrator of the Estate of Stanley Jodlowski, deceased, is awarded the sum of $10,000.00. Claimant, Dana Jodlowski, as Administrator of the Estate of Frank Jodlowski, Jr., deceased, is awarded the sum of $5,000.00.