SPRINGFIELD ANESTHESIA, LTD., Claimant, pro se.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

PER CURIAM.

(No. 6916—

MARTHA BURGETT, Admr. of Estate of EDWARD A. BURGETT, deceased, Claimant, *vs.* STATE OF ILLINOIS, STATE FAIR AGENCY, Respondent.

*Opinion filed April 16, 1975.*

FRANK S. CALANDRINO, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

HOLDERMAN, J.

Claimant, Martha Burgett, Administrator of the estate of Edward A. Burgett, deceased, filed a complaint against the respondent for the sum of $100,000.00.

The suit comes as a result of the death of Edward A. Burgett, the son of the claimant, who met his death on

September 8, 1971 at the Illinois State Fairgrounds, Springfield, Illinois.

On that date, Eddie Burgett, age 9, and Ralph Singer, age 10, went to the grandstand at the fairgrounds after school, which they had done many times before. The boys went into the elevator located on the west side of the grandstand and began operating it. While operating that elevator hoist, Eddie Burgett was looking down the gap between the elevator cage and the shaft wall. As the elevator rose, it passed a concrete protrusion, which extended out of the shaft wall about 6 inches. As the elevator passed that protrusion, Eddie's head was caught and smashed between the floor of the elevator and the protrusion. He was killed instantly as a direct result of the movement of the elevator and his position in the car. Ralph Singer then brought the elevator hoist down and summoned help.

The fairgrounds are open late in the summer months and there is a playground on the premises where many children play, as well as other activities open to the public. Children were known to play around the livestock barns and grandstand on the fairgrounds during the day and go into the grandstand itself. Children could get into the grandstand easily by several routes. Once inside the grandstand, children had ready access to the elevator hoist therein. On September 8, 1971, the grandstand and elevator were both open to anyone from the sidewalk in front of the grandstand because workmen were moving storage material into the grandstand.

At the time of the incident, the elevator hoist could be operated by merely pushing a button. There was no lock or power cut-off switch on the button panel nor was the outside door leading to the elevator even locked. Presently, the elevator hoist is on a key lock, so that it

cannot be operated without the key. At the time of the accident, no warning signs were posted in or around the elevator and no security personnel were stationed in the grandstand. Prior to 1971, there had been a security force on the fairgrounds, but after that, the security duties were shifted to the firemen, eliminating many security personnel.

The evidence is clear and uncontradicted that the fairgrounds, and particularly the vicinity where the deceased met his death, were used by children at play.

In the case at bar, the evidence shows that the State knew or should have known that children frequented the area of the unguarded elevator. The condition was obviously a dangerous one due to the lack of an enclosure to one side of the cage, constituting the elevator, which exposed protruding concrete extensions which could strike passengers or pin them between the elevator and the shaft.

It was abundantly clear that agents of the State of Illinois knew or should have known of the dangerous condition of the elevator hoist and of the presence of children in and around the grandstand area.

Jeff Esselinger, a young man of the age of 12 years, testified that the elevator was never locked, and on one day, a lady, who said she worked at the fairgrounds, cautioned children not to be in the area of the grandstand. The evidence showed that police officers had been summoned to the fairgrounds several times prior to September 19, 1971, to investigate vandalism of children in the grandstand area. The security manager of the Illinois State Fair testified that he personally had chased children from the grandstand.

The elevator was accessable. There were never locks

on the doors leading to the elevator. Power was always available for the hoist and there was no ready means of cutting that power off. There were no warning signs or instructions posted anywhere on or around the elevator doors. No periodic check was made of the area and no security personnel or elevator operators were stationed in the grandstand.

Claimant argued that the $100,000.00 limitation should apply and not the $25,000.00 limitation in effect at the time of the death of claimant's intestate. It is the theory of the claimant that the change in the amount of limitation should be retro-active.

Claimant, in stating the law in support of the claim for damages, cites the following:

"The elements essential to base liability upon one in possession or control are:

1. That a condition dangerous to children existed on the premises;

2. That the Defendant knew or should have known of the dangerous condition;

3. That Defendant failed to correct the dangerous condition or to protect children from the danger;

4. That the dangerous condition caused the injury; and,

5. That damages were sustained as a result thereof.

(*James Andrews* v. *General Contracting Company,* 37 Ill.App.2nd, 131, 185 NE 2nd 354, 1962.)"

It is our opinion that the essential elements as set forth in the case cited by the plaintiff have been met for the following reasons.

Certainly an elevator that is unprotected, unlocked so that anyone can use it, and is not completely covered could be construed as a dangerous instrument, particularly where children the ages of the deceased and his companion were playing.

Testimony was given by the companion of the deceased to the effect that they had been in this vicinity at

least thirty times, had played in the elevator numerous times, and that they had been warned by an employee of the State to stay out of the grandstand area. In this connection, it is well to note that the companion of the deceased stated there was a hole in the fence where they could get into the grounds and, in addition to that, the main gate was usually open. There can be little question that this dangerous condition caused the death complained of and that damages were sustained as a result thereof.

The State argued on the basis of *Kahn* vs. *James Burton Co.*, 5 Ill. 2nd 614, NE 2nd 836 (1955), that the claimant, in order to recover under the doctrine of attractive nuisance must show that the attraction must "habitually" attract minor trespassers, and that the condition or attraction could forseeably cause injury, and that the expense or inconvenience of remedying the condition is not overly burdensome.

The uncontradicted evidence shows that this was an "attractive nuisance" and that the whole area was used by children and had been for a considerable period of time. The fact that after the accident this elevator was kept locked is an indication that the State finally recognized the situation and certainly the expense of locking the elevator so it could not be used was not considered any great burden.

The Illinois law, as cited in the case of *Jung* vs. *Buelens*, 77 Ill. App. 2nd 391, (1966), stated as follows:

"There is a presumption of a pecuniary loss in favor of the lineal heirs of the deceased in a wrongful death accident arising from the relationship alone. The decedent's parents are, of course, lineal next of kin."

The evidence shows that the deceased was a boy 9 years of age and an exceptionally bright boy. It is our

opinion that the presumption of loss has been made by the claimant.

The question as to whether the $100,000.00 limitation should apply, and not the $25,000.00 in effect at the time of the death of the deceased has been argued by claimant. The general rule is that the statutory retro-activity is not to be given effect unless the Legislature intended to do so. There is nothing in the record here to indicate that it was the intention of the Legislature when they changed the $25,000.00 limitation to $100,000.00 to make it retro-active. It would have been a very simple matter for the Legislature, if they had so intended, to insert this in the law when it was changed.

In deciding the amount of damages to be awarded to the claimant in this case, the Court can take into account only actual monetary damages and may not consider the personal losses of the claimant, based on love and affection.

The evidence shows that the deceased was 9 years old on September 8, 1971, the date of the accident. There was testimony that he was good-natured, a hard worker, and was quick and eager to learn. The evidence also shows that he was conscientious about helping his mother around the home, that he was a Boy Scout, and that he excelled in the projects in which he became involved. All of the evidence adduced indicated that the deceased was an above average youth in intelligence and endeavors.

It is our opinion, based upon the facts in this case, that an award should be entered in the amount of $20,000.00, and an award is hereby entered in that amount in favor of claimant.