(No. 73-CC-0467—

NATIONAL BANK OF BLOOMINGTON, Admr. of the Estate of James Hinthorn, Deceased, and DALE J. HINTHORN, Claimants, *v*. THE STATE OF ILLINOIS and THE DEPARTMENT OF TRANSPORTATION, Respondents.

*Opinion filed July 28, 1980.*

DAVID V. DORRIS, for Claimants.

WILLIAM J. SCOTT, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondents.

Roe, C. J.

This cause is before the Court on the motion of the Claimants for judgment on the pleadings which was filed March 21, 1980. No response to said motion was filed by the Respondent. A hearing was held on May 25, 1979 before Commissioner Richard Parsons. Following the hearing both parties were to file abstracts of the testimony, briefs, and arguments. Rule 18 of the Rules of the Court of Claims provides that these documents must be filed by the Claimant on or before sixty days after all evidence has been completed and filed by the Clerk of the Court, which was done. The Respondent has not filed anything since the hearing, the date for filing having long since come and gone. Although the Claimants had originally requested oral argument before the full Court, we now find that they have waived such request by their motion for judgment on the pleadings and letter acknowledging as much.

The claim is based on alleged negligence of the Department of Transportation and the State of Illinois. It has been brought by the administrator in behalf of the real parties in interest as well as in behalf of the estate of James Hinthorn, deceased, and the real parties in interest are as stated in the complaint to be: surviving father of decedent, Dale J. Hinthorn; surviving mother of decedent, Mary H. Hinthorn; surviving brother of decedent, Gary Hinthorn; surviving brother of decedent, Steven G. Hin-

thorn, and another surviving brother, Robert D. Hinthorn. Claimants' decedent was killed following a head-on collision when he lost control of his automobile after encountering standing or running water on Illinois Route 9 east of Bloomington, Illinois. The accumulation of water was due to rainfall prior to the time of the collision. The decedent's car went out of control upon entering the water and the collision took place with a truck in the opposite lane of the two lane highway.

After reviewing the complete record in this case we find the Claimants to have proved a *prima facie* case. The Assistant Attorney General informed the commissioner that he had no defense witnesses and preferred to keep his defense secret, but would set out his defense in his brief—which has not been filed.

We have consistently maintained that in cases such as the one at bar Claimant must show that the State was negligent, that such negligence was the proximate cause of the injury, and that Claimant (or Claimant's decedent as in this case) was free from contributory negligence.

The duty of the State in such cases has also been stated many times in the past. Although the State is not an insurer of all accidents which occur on a highway, it does have an obligation to keep its roads in a reasonably safe condition and the duty to place adequate signs warning of unusual conditions which motorists may encounter.

The testimony of the Claimants' witnesses at the hearing was as follows: Norman Hinkle, a ten year veteran of the Illinois State Police who had training and much experience in accident investigations, investigated the accident. He stated that it occurred on Illinois Route 9, approximately 12 miles east of Bloomington. He described the road as being a two lane highway running

east and west with rough jagged shoulders and numerous potholes. Irma Lee Brown who lived on a nearby farm also described the pavement as having been in poor condition.

The testimony indicated that heavy rainfall had occurred. Officer Hinkle said it was a rainy day and that it had rained prior to the accident. This statement was corroborated by Ms. Brown. Earl Felts, the driver of the truck involved in the collision and an occurrence witness, said he had his windshield wipers on at the time of the accident.

It was also shown that there was water on the pavement at the time and place of the accident. Mr. Felts testified that he pulled his truck over to the side of the road to let oncoming traffic proceed more easily. He stated that the accumulation was eight to ten inches deep and covered approximately 75 to 100 feet of the highway at the time of the accident. Officer Hinkle stated that when he arrived at the scene he saw water on the pavement over six inches deep which covered both lanes for "quite a distance" but did not say exactly the distance covered.

Furthermore, the State had notice of the dangerous condition. Evidence indicated that it was a recurring condition and that it was the practice of the State to place temporary warning signs near the accident site whenever water accumulated. Officer Hinkle stated that he had patrolled this section of highway for a considerable period of time before the accident and had driven over the area following heavy rainfalls. He further testified to having seen standing water on the same site on prior occasions. On direct questioning he said the water was gone by the time the accident had been cleared away. On cross-examination he explained that water would

accumulate while it was raining and after the rain slacked off it would drain away slowly, probably taking two hours to disappear. It was his practice in the past, he said, that when he saw standing water on the site he would call it in by radio and request that signs be posted.

Ms. Brown stated she had lived near the site for 28 years and had observed standing water at the same location on prior occasions. She explained that the water drained off slowly following rain. The normal amount of time it took to drain off varied depending on the amount of rain and saturation of the soil. In the past she said that temporary lighted signs were placed on the highway to warn motorists.

Mr. Felts testified on cross examination that he had travelled the highway in both directions for several years and had seen water running across the road at that one particular spot on prior occasions.

Mable Spaid who lived near the scene testified that she frequently drove past the accident site and had witnessed standing or running water there three or four times a year.

Dale and Mary Hinthorn, parents of the decedent, stated they travelled Route 9 a couple of times a week and had observed standing water at the scene at least three or four times a year.

We also find that Respondent failed to warn the traveling public of the dangerous condition in that it did not place any warning signs or devices on the highway to apprise the public of the dangerous condition. Officer Hinkle testified that he did not see any signs in the vicinity of the accident and did not believe there were any. Mr. Felts testified that he saw no warning sign whatsoever. Mable Spaid who lived a short distance from the road and travelled to Bloomington a few hours

after the accident stated she did not remember seeing any such warning signs while en route. Mary Hinthorn and Dale Hinthorn, parents of decedent, testified to having travelled to the accident site upon being notified of the accident and stated they did not see any signs. Ms. Brown stated there were no signs placed near the site prior to the accident. Although we note that some of the testimony is inconclusive in that Mr. Felts was coming from a different direction than decedent, Ms. Spaid passed by the site after the accident, the Hinthorns were understandably upset, and this portion of Ms. Brown's testimony was discredited on cross examination, we believe that, viewing the record as a whole, Claimant met its burden of proof on this issue. We also note that Respondent offered no witnesses to contradict any of the testimony.

Proximate cause of the accident was clearly established by the eyewitness testimony of Mr. Felts, the driver of the truck involved. He stated that when the decedent's vehicle came in contact with the water, it planed, went off the pavement and into a ditch, came out of the ditch and crashed into his truck head on.

The next element of the Claimants' case which must be shown is that decedent must not have been contributorily negligent in causing the injuries complained of. We find that Claimant has met its burden with respect to this requirement also. Officer Hinkle testified that the speed limit over that particular stretch of highway was 60 miles per hour and it was his opinion that 45 miles per hour would have been a safe driving speed under the conditions. Mr. Felts testified that the decedent was not traveling over 50 miles per hour. The evidence also indicated that the area around the accident site was hilly and there was a hill a short distance away from the water. Thus a person traveling in the direction of decedent

would not be able to see the water until he was almost upon it. The testimony also indicated decedent was following another car and therefore his vision was further reduced. The record also indicates that decedent was unfamiliar with the road and had not travelled it frequently. Even if decedent had been more familiar with the road he would have been accustomed to seeing warning signs as that was shown to have been the normal situation when flooding occurred.

The facts in the case at bar are clearly distinguishable from those in *Reidy v. State*, No. 5602, filed September 11, 1975 and *Brockman et al. v. State*, No. 6005, filed September 11, 1975. In *Reidy* the Claimant sought damages for personal injuries sustained when he drove his car into an accumulation of water on a State highway and collided with another auto coming from the opposite direction. The distinguishing facts in *Reidy* are (1) that Claimant was traveling on the wrong side of the two lane road, (2) that there was no evidence of prior rainfall and no proof as to how the water accumulated, (3) that there was no actual notice of a dangerous condition to the State even though the highway was patrolled twice daily, (4) that there was no knowledge of prior flooding and the road was in good repair, and (5) Claimant should have been able to see far enough ahead to reduce speed accordingly. In *Brockman*, a car was also driven into a patch of water resulting in personal injury. *Brockman* differs from the instant case in that the State had no notice of the dangerous condition.

The last item which must be proven to sustain a claim based on negligence is damage. There was evidence of special damages, count two of the complaint: $2,015.10 for funeral bills and $2,491.75 for medical care totalling $4,506.85. On cross examination Mr. Hinthorn stated that a portion of that sum had been paid with insurance

proceeds. It has long been the rule in this Court that the State is entitled to a setoff of the amount of insurance proceeds paid to Claimants, the reasoning being that there can be but one satisfaction of any claim. There is nothing in the record before us to allow us to make a determination as to the proper amount to be set off. We find that the Respondent failed to sustain its burden with respect to this issue and therefore we make no deduction in the amount of the award for that set off. However, we note that only $3,861.75 was claimed in count two and we will not award more than the amount claimed.

Other evidence with respect to damages in this case is sparse. In the Claimants' brief they quote from a pattern jury instruction. Although we recognize that Claimants have cited it for authority as to the elements and presumptions that they argue should be taken into consideration, we reaffirm what Judge Burks said in *Steen v. State* (1973), 29 Ill. Ct. Cl. 111. The thrust of his opinion was stated thus:

We do not believe that the legislature intended this Court, in granting awards, to be guided by any speculation as to the amount a jury might award in a similar case, if the State were suable in the Circuit Court. Supra at 112.

There is a presumption of a pecuniary loss in favor of the lineal heirs of the deceased in a wrongful death accident arising from the relationship alone. This presumption is sufficient to sustain a verdict and judgment awarding substantial damages without proof of actual loss. However, where the next of kin are collaterals, their damages are only such as are proved. *Hall v. Gillins*, 13 Ill.2d 26, 147 N.E.2d 352; *Ferraro v. Augustine*, 45 Ill. App. 2d 295, 196 N.E.2d 16; *Burgett v. State*, 30 Ill. Ct. Cl. 510; *Jodlowski v. State*, 26 Ill. Ct. Cl. 66.

The record in this case indicates that the decedent was beginning his first semester at Illinois State University. He had been an honor student in high school. Although

he was not employed at the time of his death, he had previously worked during the summers at a grocery store. He also had worked on various farms in the area. Further, the Claimants established that James Hinthorn was in good health, close to his family, and had provided substantial help to his parents in the past.

This Court has frequently stated that there is no fixed rule of compensation in damages for personal injury or wrongful death. *Steen*, supra at 113; *Pugh v. State*, 29 Ill. Ct. Cl. 124, 131. We feel that as to count one, an award of $30,000.00 is reasonable and just. As to count two, the claim by Dale Hinthorn for medical and funeral expenses of $3,861.75, we award the amount claimed. It should be noted that the notice of intent to commence suit did not list as interested parties the brothers of the decedent. The record contained no evidence as to any damages sustained by them as a result of the death of James Hinthorn and the law presumes none.

It is hereby ordered that the sum of $30,000.00 (thirty thousand dollars and no cents) be awarded to Dale J. Hinthorn and Mary H. Hinthorn. It is further ordered that the additional sum of $3,861.75 (three thousand eight hundred sixty-one dollars and seventy-five cents) be awarded to Dale J. Hinthorn.