(No. 87-CC-1180—

DONNA F. PESSIN, as Executrix of the Estate of STUART I. PESSIN, deceased, Claimant, v. THE STATE OF ILLINOIS, Respondent.

*Opinion filed November 19, 1987.*

*Opinion and order filed February 25, 1988.*

*Order filed May 17, 1993.*

*Opinion filed October 27, 1995.*

*Order on petition for rehearing filed March 27, 1997.*

PESSIN, BAIRD, BELSHEIM & WELLS (ROBERT E. WELLS, JR., of counsel), for Claimant.

JIM RYAN, Attorney General (MICHAEL WULF, Assistant Attorney General, of counsel), for Respondent.

## OPINION

SOMMER, J.

This cause coming to be heard on the Respondent's motion to dismiss, and the parties having been heard, and the Court being fully advised in the premises:

Finds that the Claimant has received over $300,000 from various life insurers of the Claimant's decedent. The terms of the life insurance policies are not determinable from the present record. The Respondent has moved to dismiss based on the long standing precedent of this Court which holds that the State is entitled to set-off the amounts of certain recoveries accruing to the Claimant. Further, that when such set-off reaches the jurisdictional limit of $100,000, the claim against the State is dismissed.

However, this Court has not ruled on whether life insurance proceeds are subject to the set-off. It would seem that a whole life policy is a contract from which recovery necessarily would occur someday. Therefore, proceeds from a typical whole life insurance policy are not subject to the set-off. It is therefore, ordered that the Respondent's motion to dismiss is denied and that this claim be sent to a commissioner for hearing.

## OPINION AND ORDER

SOMMER, J.

This cause coming to be heard upon the Respondent's petition to reconsider this Court's ruling of November 19, 1987, due notice having been given, and this Court being fully advised in the premises:

Finds that not every claim accruing to a decedent's personal representative, heirs, etc., because of the event of the decedent's death is subject to being set-off under section 26 of the Court of Claims Act. Ill. Rev. Stat. 1985, par. 439.24-6.

The above section states the set-off rule. "There shall be but one satisfaction of any claim or cause of action and any recovery awarded by the Court shall be subject to the right of set-off."

It is the Respondent's argument that section 26 means that "No Claimant may be compensated by a Court of Claims award * * * when that Claimant has already been satisfied from any other source." *Page 6 - Respondent's Memorandum.*

"'Satisfaction'" is defined as * * * paying a party what is due him * * * or awarded to him by the judgment of a Court or otherwise." (*Black's Law Dictionary* 4th Edition, p.1509.) For example, however, for this Court to rule that a decedent's spouse succeeding as a joint tenant to the marital home because of the decedent's tortious death may not recover damages in the Court of Claims because she has already been satisfied would not be credible. This is because the benefit received by the spouse is not satisfaction. It is not a payment of damages by a tortfeasor to compensate for the injury, rather it is pursuant to a pre-existing property right which has no relationship to the tortious damage.

Whole life insurance is much the same. The benefit is pursuant to a pre-existing contract, paid for by the decedent, which will be performed someday no matter how the death is caused. The value may seem to be related to the tortious damage, but it is more a matter of actuarial tables and willingness to pay. A 90-year-old man is compensated the same as a 40-year-old man.

The rule in this order is to apply to whole life insurance only. It is therefore ordered that the Respondent's petition to reconsider this Court's ruling of November 19, 1987, is denied, and the commissioner is instructed to take evidence of the terms and conditions of insurance payments made and include such in his report to this Court.

## ORDER

SOMMER, C.J.

This cause coming to be heard on the motion of the Court, and this matter having been argued before this Court on February 18, 1993, and this Court being fully advised finds:

1. That this Claim was tried before the commissioner on June 3, 1991.

2. That the commissioner ruled, subject to the opinion of this Court, that a retained expert witness, Robert Mains, might testify on behalf of the claimant.

3. That at no time was disclosure of this expert's identity made to the respondent pursuant to Supreme Court Rule 220(b).

4. That no scheduling orders were entered concerning disclosure of experts; and the respondent did not attend any of the pre-trial proceedings where such might have been discussed.

5. That the Respondent's attorney objected to the testimony of the expert at the trial, due to lack of disclosure.

6. That this Court is required to strike the testimony of the expert under Rule 220(b). *Barth v. Reagan* (1990), 39 Ill. 2d 399; *Wakeford v. Rodehouse Restaurants of Missouri, Inc.* (1992), 154 Ill. 2nd 543.

7. That the purpose of the timely disclosure of expert testimony is to avoid surprise.

8. That justice would be best served by this Court's remanding this claim to the commissioner for re-trial and scheduling of expert testimony.

It is therefore ordered that this Claim be remanded to the commissioner for re-trial. The commissioner shall make scheduling orders allowing for the disclosure of expert testimony, including the testimony of Mr. Mains; and the parties by stipulation may preserve any testimony from the June 3, 1991, trial.

## OPINION

SOMMER, C.J.

This is a wrongful death action brought by the executrix and widow of Stuart Pessin, deceased, on behalf of the decedent's estate, herself, and the decedent's two minor children.

The Claimant's deceased husband, Stuart Pessin, was driving his automobile on Illinois Route 15, St. Clair County, Illinois, on December 9, 1985. At approximately 6 p.m. the decedent's automobile veered into oncoming traffic, where it spun and collided with an automobile head-on, killing Mr. Pessin. At the site of the accident, approximately one-half mile east of the Lady of Snows Shrine, the highway was four lanes, gently curving to the right when driven westerly, and divided by a median

three inches high. The decedent was driving westerly in the inside lane.

Evidence introduced at the hearing indicated that there was light rain at the time of the accident; and it had been raining for at least an hour before the accident, accumulating to about one-tenth (.1) of an inch. There was testimony that water was standing to a maximum depth of one to one-and-a-half (1-1½) inches in the inside lanes of the highway; and records of the Department of Transportation indicate that water tended to pool in the inside lanes during heavy rains, probably due to a heaving of the outer lanes, inadequate drainage, and rutting.

The Claimant's theory of the accident is that Mr. Pessin's automobile hydroplaned upon hitting standing water and went across the low median uncontrollably. Additionally, the absence of super-elevation at the curve would tend to cause an automobile to drift toward the median when traveling westerly; and the lower median would not restrain an out-of-control automobile. Hydroplaning upon the accumulation of water in combination with the other cited factors is alleged to have been the cause of the accident; and the accumulation of water allegedly was due to the negligent inaction of the Department of Transportation. Said Department, the Claimant maintains, had notice of the condition, due to five other accidents which had occurred at the site prior to the present accident over an almost five-year period.

If this Claim had been made against a unit of local government, it would be subject to a motion to dismiss, as injuries caused by the effect of weather conditions on local roads are not compensable. (745 ILCS 10/3-105.) However, no such statute applies to State highways.

The State is not an insurer against every accident on its highways, even if the accident is caused by a defect in

the highway. (*Scroggins v. State* (1991), 43 Ill. Ct. Cl. 225.) The State has a duty to keep its highways reasonably safe for ordinary travel by persons using due care and caution for their safety. (*Berry v. State* (1968), 26 Ill. Ct. Cl. 377.) Liability has been found for failure to maintain its highways when the State had actual or constructive notice of the hazard created by the failure of maintenance. *Siefert v. State* (1989), 42 Ill. Ct. Cl. 8.

A Claimant is required to prove by a preponderance of the evidence that a defect or hazardous condition existed at the site of the accident; that the State had actual or constructive notice of the defect or hazardous condition; and that the defect or hazardous condition was the proximate cause of the accident. (*Cataldo v. State* (1983), 36 Ill. Ct. Cl. 24.) The State's duty to remedy a defect or hazardous condition depends upon the "magnitude of the risk involved, the burden of requiring the State to guard against the risk, and the consequences of placing such a burden on the State." *Wilson v. State* (1989), 41 Ill. Ct. Cl. 50, 55.

In the present Claim, reports compiled by the Department of Transportation since 1980 indicate an awareness of a problem of standing water on Route 15 near the scene of the accident. Various corrections subsequently were suggested.

In early 1987, after the accident in this claim, but prior to any repairs being made to Route 15, District 8 of the Department of Transportation prepared a project report covering Route 15 from the Shrine entrance to Illinois Route 13. The accident statistics in the report were from 1981 through 1986. Excerpts from the project report are as follows:

"The purpose of this project is to improve a hazardous highway section which has contained several identified high-accident locations * * * .

\* \* \* An inordinately high number of accidents (19%) along this stretch involve vehicles crossing over the raised median. Three fatalities have occurred as a result thereof. Of these cross-over accidents, 39% were wet road and 6% were ice/snow related.

The primary cause of accidents along this section is vehicle hydroplaning resulting from severe rutting \* \* \*.

Other conditions which contribute to retaining water on the pavement are shoulders which drain toward the roadway, low super-elevation and extreme rutting \* \* \*."

In the present case, no one knows what caused the accident, as the driver did not survive. According to eye witnesses, the driver was not speeding, and the automobile experienced no mechanical failure that could be detected afterward. Kevin Mafpe, an eye witness, stated that "\* \* \* it was immediate, he didn't fishtail or anything, he just came across the median." Henry John Brenner, another eye witness, stated that Mr. Pessin's auto "veered off."

This Court has made awards in cases of accidents allegedly caused by water standing on a highway: *National Bank of Bloomington v. State* (1980), 34 Ill. Ct. Cl. 23; *Sallee v. State* (1990), 42 Ill. Ct. Cl. 41; *Scott v. State* (1990), 43 Ill. Ct. Cl. 85; and has denied others: *English v. State* (1982), 35 Ill. Ct. Cl. 180; *Reidy v. State* (1975), 31 Ill. Ct. Cl. 53; *Wilson v. State* (1989), 41 Ill. Ct. Cl. 50.

An examination of the claims in which awards were made or denied for accidents allegedly caused by water standing on the highway leads to the conclusion that each claim turns on the facts peculiar to it. Some of the claims lacked notice by the State of a hazardous condition. In others deep water was hit. In only one claim was hydroplaning found to be a cause sufficient for recovery, that being in *Sallee*.

In *Sallee*, there was approximately one inch of water standing across the highway. The state trooper who was first on the scene testified to "skid marks beginning where the automobile hit the water." (*Sallee*, p. 45.) Additionally,

the roadway was covered with water over its entire width for ten feet.

In *National Bank of Bloomington*, the driver who was killed hit standing water eight to ten inches deep. In *Scott*, there was testimony that the auto did not hydroplane but hit deeper water and veered.

In *English*, the Court refused to draw the conclusion that the vehicle that crossed the center line in rainy conditions hydroplaned, even though an expert and a state trooper testified that hydroplaning occurred. The Court ruled that to find that the collision occurred because of hydroplaning is speculation. The driver survived the accident, but he did not testify. Additionally, there were unresolved questions regarding the presence of liquor and the condition of the automobile. In *Wilson*, there was no proof of what caused the accident, though there was water standing on the road.

In the present claim, the Claimant's expert, Robert Mains, after reviewing documents obtained from the Department of Transportation, testified that to a reasonable degree of engineering certainty the highway in question was unreasonably dangerous at the time of the accident; and that such condition was reasonably foreseeable by the State. When asked whether to a reasonable degree of engineering certainty the "unreasonably dangerous condition" caused the fatal accident, he responded, "It certainly was highly contributory."

The Claimant's second expert, Duane Dunlap, concurred in his deposition with Mr. Mains' assessment. The only difference in his opinion testimony was that in response to the question concerning whether the "unreasonably dangerous condition" was a proximate cause of Mr. Pessin's accident, he answered, "Yes." He further testified that the action of the automobile was "certainly

consistent with a hydroplaning accident." Mr. Dunlap then provided a detailed discussion of hydroplaning.

Mr. Dunlap testified that in circumstances of hydroplaning, even at or lower than at highway speeds, a driver would have little expectation of the dangers ahead and would have little or no control over the vehicle once it began to hydroplane. He testified that such acts as applying the brakes, steering to avoid the hazard and taking one's foot off the gas pedal could make the danger worse.

In addition, there was evidence that Mr. Pessin's vehicle was inspected per State of Missouri regulations just four days before the accident, and there was no evidence of vehicular defects.

The Claimant's attorneys are asking us to make certain findings in order to establish liability on the part of the State. First, that the decedent's automobile hydroplaned on water standing against the center median and that said hydroplaning was the proximate cause of the accident. Second, that the condition of the road at the accident site was unreasonably dangerous; that the State had knowledge of the condition because of its studies and the number of accidents that occurred at the site; and that the State failed in its duty to eradicate the unreasonably dangerous condition.

As to the first issue, there was no physical evidence of hydroplaning as there was in *Sallee*. The Claimant presented a case for hydroplaning which did not necessarily exclude other causes.

"The causes of one skidding an automobile on a wet or icy pavement are manifold, and are most often hidden within the breast and mind of the operator of the skidding car." *Murphy v. Kempler* (1951), 344 Ill. App. 287, 100 N.E. 2d 660, 662.

Both of the Claimant's experts testified that the action of the decedent's automobile was "consistent" with

hydroplaning. As in *English*, we find that the testimony
by the Claimant's experts that the decedent's automobile
hydroplaned was speculative and not sufficient proof of
hydroplaning. Indeed, the testimony in *English* was more
emphatic than that in the present claim.

As to the second issue, the experts testified that the
highway at the scene of the accident was unreasonably
dangerous due to the tendency of water to flow to the in-
ner lanes along the media, the low median itself, the
rough road, the lack of super-elevation at the slight curve
where the accident took place, and the accident history at
the site.

The Department's project memorandum of April 17,
1987, (Claimant's exhibit #11), from which many of the
quotations and statistics in the Opinion derive, states that
the average daily traffic volume was 13,600 in 1985. The
Claimant's expert, Mr. Mains, referred to the average
daily traffic volume in his testimony and characterized it
as "moderately high volume." The average daily traffic
count when extended over a year would give a count of
approximately five million vehicles on the road in ques-
tion per year. The number of automobiles going through
the accident site in the westerly lane would be at least 2.5
million. The only accident at the site in 1985 was the
decedent's. Over six years, at least 15 million automobiles
would be in the position of the decedent's; and yet only
eight accidents occurred at the site, four in wet weather.
Prior to the present accident there were five accidents at
the site in the preceding five years; none were fatal.

Hundreds of thousands of motorists went through
the accident site without accidents in wet weather in
1985; and a few million vehicles went through the acci-
dent site over six years in wet weather, with four accidents
occurring in wet weather. Thus, the number of accidents

at the site compared with the traffic count appears very low. The fact that three of the accidents at the site were head-on and three were sideswipes over a six-year period indicates that when accidents did occur they had a potential for substantial harm. Head-on accidents are more severe due to the doubling of the impact velocity.

The State's duty to remedy a hazardous condition, if we were to find that such existed at the crash site, depends as stated in *Wilson* upon the "magnitude of the risk involved, the burden of requiring the State to guard against the risk, and the consequences of placing such a burden on the State."

We have seen that when accidents did occur at the site of the present accident there was a risk of substantial harm. We have seen also that in light of the traffic flow volume past the site of the accident the incidence of accidents appears minimal, though no testimony was entered on this point by either party. The project report speaks of "high-accident locations" which do include the accident site. However, this is a conclusion drawn by the writer of the 1987 report and is not binding on this Court when considering an accident which occurred in 1985.

The burden placed on the State to remedy the condition at the crash site was great. Apparently, warning signs or lights would not have been a sufficient remedy. According to Mr. Dunlap, signing would have been of "minimal use" and a flashing light "might have some effect." Both experts agreed that the proper remedy was to build a new road and install median guards.

The consequences of the burden placed on the State would be that the State would have to make a determination based upon accident history and road conditions that it must act. The State would then have to develop plans, obtain priority for funding over other sites in the State

with accident histories, have the funds allocated and let contracts. All this would have to be undertaken and completed on the evidence of five accidents over the previous five years, of which this Court knows little as to the cause or fault of the drivers, and on the fact that there were no fatalities at the accident site at issue for over five years prior to the Claimant's decedent's accident in late 1985.

The lack of substantial accident history when compared with the fact that a few million automobiles passed through the accident site in wet conditions without fatal mishap, coupled with the fact of the great burden placed upon the State to repair the site and sites like it, leads us to the finding that the State did not breach its duty when it did not repair the site prior to the Claimant's decedent's accident. It is therefore ordered that this Claim is denied and dismissed.

## ORDER ON REHEARING

SOMMER, C.J.

This cause returns on Claimants' petition for rehearing following the opinion of this Court entered on October 27, 1995. Claimants' petition was argued before the full Court on November 12, 1996, after having been scheduled on previous occasions which were inconvenient for one or more of the parties.

This Court's opinion set forth the elements which were Claimants' burden to prove in order to sustain this claim:

"A Claimant is required to prove by a preponderance of the evidence that a defect or hazardous condition existed at the site of the accident; that the State had actual or constructive notice of the defect or hazardous condition; and that the defect or hazardous condition was the proximate cause of the accident." *Cataldo v. State* (1983), 36 Ill. Ct. Cl. 23, 25.

Claimants once again argue that various defects in the highway, in conjunction with rain, caused the decedent's automobile to hydroplane, which led to his death.

This Court has never found hydroplaning to be the proximate cause of any automobile accident unless there was some actual physical evidence of hydroplaning. To reflexively conclude that hydroplaning occurred just because a highway was wet is not permissible, for that is too speculative. *English v. State* (1982), 35 Ill. Ct. Cl. 180, 185.

It is undisputed that there was no physical evidence here of hydroplaning. Nonetheless, Claimants contend that hydroplaning should be found to be the proximate cause based on testimony from one of Claimants' experts and portions of a 1993 request for admissions that was never answered by Respondent.

Expert testimony requires more than speculation:

"[T]he existence of a fact may not be inferred when the existence of a fact inconsistent with the first can be inferred with equal certainty." *Damron v. Micor Distributing, Ltd.* (1995), 276 Ill. App. 3d 901, 909, 658 N.E.2d 1318, 1324.

Here, one of Claimants' experts testified that the action of the decedent's automobile was "consistent with" hydroplaning. Of course, the action of the vehicle would also be consistent with the decedent's having fallen asleep, with the decedent's having taken his eyes off the road to tune the radio, or with many other possible causes uniquely within the decedent's control. Thus, the expert's hydroplaning theory does not meet the *Damron* standard, for there is nothing to rule out the equal viability of alternate theories of causation.

With respect to the unanswered request for admissions, Claimants' counsel did not "prove-up" the unanswered requests as required by Illinois law. (See, *e.g.*, *Banks v. United Insurance Co. of America* (1975), 28 Ill. App. 3d 60, 62, 328 N.E.2d 167, 169.) And even if Claimants were somehow to be entitled to place the unanswered requests into evidence at this late stage, there is

nothing in them which proves that the decedent's automobile had actually hydroplaned. Rather, request no. 28 states:

"The primary cause of accidents along Illinois Route 15 east of Route 157 in the area when the accident to decedent, Stuart I. Pessin, occurred was hydroplaning resulting from severe rutting * * *."

and request no. 40 states:

"The testimony of the eyewitnesses is consistent with the decedent's vehicle hydroplaning."

These requests, even if taken in the light most favorable to Claimants, simply do not satisfy Claimants' burden of proving that this particular accident was actually caused by hydroplaning.

In short, Claimants merely advanced a theory as to how the accident occurred; they failed to produce sufficient evidence to sustain that theory and meet their burden of proof on causation.

Claimants' failure to sustain this burden of proof is dispositive of the litigation. Accordingly, we need not address Claimants' criticisms of the court's statistical analysis of the traffic data from the accident site.

It is therefore ordered that Claimants' motion for rehearing is denied.